# IN THE SUPREME COURT OF TEXAS

══════════
No. 10-0671
══════════

KERRY HECKMAN, ET AL., ON BEHALF OF THEMSELVES AND ALL OTHER
PERSONS SIMILARLY SITUATED, PETITIONERS,

v.

WILLIAMSON COUNTY, ET AL., RESPONDENTS

══════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS
══════════════════════════════════════════════════════

**Argued November 9, 2011**

JUSTICE WILLETT delivered the opinion of the Court.

A criminal defendant's right to counsel—enshrined in both the United States and Texas Constitutions—ranks among the most important and fundamental rights in a free society. The plaintiffs in this civil action assert that they, and other similarly situated indigent criminal defendants, have been deprived of that right. The court of appeals dismissed their suit, concluding that the trial court lacked jurisdiction. We disagree. While our Constitution requires vigilance lest courts overstep their jurisdictional bounds, courts also must dutifully exercise jurisdiction rightly theirs. Here, the court of appeals erred in concluding that the plaintiffs lacked standing and that their claims are moot. We reverse the court of appeals' judgment and remand to the trial court for further proceedings.

## I. Background

In 2006, petitioners Kerry Heckman, Monica Maisenbacher, Sylvia Peterson, and Tammy Newberry each faced misdemeanor charges in Williamson County—charges that could lead to up to a year in prison. Each claimed to be unable to afford legal representation. And each claimed that he or she had been, or soon would be, denied his or her right to court-appointed counsel.

They sought relief by initiating this lawsuit pursuant to section 1983 of the Civil Rights Act of 1871. In addition to suing Williamson County, they sued its constitutional county judge,[1] three of its county court at law judges,[2] and its magistrate judge[3]—all in their official capacities.

Heckman, Maisenbacher, Peterson, and Newberry claimed that these defendants ("defendants") had deprived, conspired to deprive, and allowed others to deprive them of two constitutionally protected rights: the right to counsel and the right to self-representation. Petitioner Jessica Stempko, whose minor daughter was then facing misdemeanor charges in Williamson County, joined them in a third claim: that defendants had deprived them of their constitutionally protected right to open-court proceedings.

These five plaintiffs ("plaintiffs" or "named plaintiffs") brought these claims not just on their own behalf but for the putative class of all individuals accused of a misdemeanor crime in Williamson County who faced the possibility of confinement and could not afford legal counsel.

---

[1] The Honorable John Christian Doerfler, who has been substituted as a defendant in this case by the Honorable Dan A. Gattis, his successor in office. *See* TEX. R. APP. P. 7.2(a).

[2] The Honorable Judges Suzanne Brooks, Tim Wright, and Donald Higginbotham (substituted as a defendant here by the Honorable Doug Arnold, his successor in office).

[3] The Honorable William Eastes.

2

They sought injunctive and declaratory relief "[t]o stop Defendants' unconstitutional and unfair practices."

Defendants filed a plea to the jurisdiction. First, they asserted that the trial court lacked jurisdiction to intervene in equity into pending criminal proceedings. Second, they argued that Heckman, Maisenbacher, and Peterson all lacked standing to bring their claims and that their claims were moot. They introduced undisputed evidence that since joining this suit, those three plaintiffs had each been appointed counsel and, further, that their criminal cases had concluded. Defendants also introduced undisputed evidence that a visiting judge[4] had been the one who refused to provide appointed counsel to Heckman, Maisenbacher, and Peterson—not any of the defendant county court at law judges. Third, defendants argued that Newberry's claims and Stempko's claim were not ripe because they were based on events that had not yet happened (that is, they were not yet far enough along in the pretrial process to have any grounds to make these claims).

The trial court denied the plea to the jurisdiction. Defendants promptly filed an interlocutory appeal,[5] leading the trial court to stay further proceedings. Consequently, the trial court did not rule on plaintiffs' petition for class certification—it neither certified the class nor denied certification.

On appeal, defendants renewed their jurisdictional arguments. They also moved to dismiss and filed supplemental briefing, noting that all of plaintiffs' criminal cases had been resolved and that, beforehand, all of them had been appointed counsel. (In the case of Jessica Stempko, who did

---

[4] The Honorable Bob Jones, who was visiting from Travis County and who is not a party to this lawsuit.

[5] *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8); *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638–39 (Tex. 2009).

3

not face criminal charges, defendants asserted the same with regard to her daughter.) Finally, they asserted that a number of subsequent developments had mooted the claims of the putative class—Williamson County had revised its policies for appointing legal counsel for indigent misdemeanor defendants, and had hired additional personnel to ensure that those defendants who needed a lawyer received one.

The court of appeals held that none of the named plaintiffs ever had standing to pursue all of the purported class's claims; for this reason, the court held that none of the named plaintiffs had standing to litigate whether the putative class should be certified. The court held that, for this reason, the claims were moot, as was the suit itself.[6] It vacated the trial court's denial of defendants' plea to the jurisdiction and dismissed the suit for want of subject-matter jurisdiction.

Thereafter, we granted plaintiffs' petition for review.[7]

## II. Appellate Jurisdiction of this Court

Defendants argue that this appeal falls outside the constitutional and statutory scope of our appellate jurisdiction. Because these issues may be dispositive, we consider them first.

### A. Interlocutory Appeals

Ordinarily, this Court lacks jurisdiction over an appeal from an interlocutory order.[8] Here, however, we have jurisdiction over this case because the court of appeals' decision conflicts with

---

[6] __ S.W.3d __, __.

[7] 54 TEX. SUP. CT. J. 1012 (May 27, 2011).

[8] *See* TEX. GOV'T CODE § 22.225(b).

4

prior decisions of this Court.[9] The court of appeals held that, because no named plaintiff had standing on all of the class's claims, no named plaintiff had standing at all.[10] Previously, we have held that a plaintiff's lack of standing to bring some, but not all, of his claims just deprives the court of jurisdiction over those discrete claims.[11] Given this conflict, we conclude that this case does not fall outside the statutory scope of our appellate jurisdiction over interlocutory appeals.

## B. "Criminal Law Matters"

We next consider whether this case falls outside the scope of our appellate jurisdiction as delineated by the Texas Constitution. Defendants assert that it does, arguing that Heckman's case amounts to a "criminal law matter." We disagree.

### 1.

The jurisdiction of this Court—like that of all Texas courts—derives from Texas's Constitution and statutes.[12] Under our Constitution, this Court's appellate jurisdiction "extend[s]

---

[9] *See id.* § 22.225(c).

[10] __ S.W.3d at __.

[11] *E.g.*, *Williams v. Lara*, 52 S.W.3d 171, 184–85 (Tex. 2001); *see Thomas v. Long*, 207 S.W.3d 334, 338 (Tex. 2006).

[12] *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 459–60 (Tex. 2011).

to all cases except in criminal law matters."[13]   Thus, if defendants are correct and this appeal constitutes a criminal law matter, then we lack the authority to decide it.[14]

No one rule clearly defines the content or contours of "criminal law matters."  We do not write on an entirely blank slate, however.  To determine whether a case is a criminal law matter, we look to the essence of the case to determine whether the issues it entails are more substantively criminal or civil.[15]  Criminal law matters include disputes where "criminal law is the subject of the litigation;" such cases include those "which arise over the enforcement of statutes governed by the Texas Code of Criminal Procedure."[16]  Criminal law matters also include disputes "which arise as a result of or incident to a criminal prosecution."[17]

In addition to the principles announced in our own caselaw, we find guidance in the decisions of the Court of Criminal Appeals.[18]  The Texas Constitution gives that court the authority to issue a variety of writs, including the writ of mandamus, "in criminal law matters."[19]  Thus, the Constitution uses the same term to demarcate the end of our appellate jurisdiction and the beginning

---

[13] TEX. CONST. art. V, § 3(a) ("[The Court's] jurisdiction shall be co-extensive with the limits of the State and its determinations shall be final *except in criminal law matters*.  Its appellate jurisdiction shall be final and shall extend to all cases *except in criminal law matters*." (emphasis added)).

[14] *Harrell v. State*, 286 S.W.3d 315, 317 (Tex. 2009).  However, we necessarily have jurisdiction to decide whether this appeal falls within the category of "criminal law matters," because "[c]ourts always have jurisdiction to determine their own jurisdiction."  *Id.*; *see Campbell v. State*, 85 S.W.3d 176, 180 (Tex. 2002).

[15] *See Harrell*, 286 S.W.3d at 318–19.

[16] *Id.* at 318.

[17] *Id.*

[18] *See, e.g.*, *id.* (citing opinions from the Court of Criminal Appeals for the definition of "criminal law matters").

[19] TEX. CONST. art. V, § 5(c).

of our sister court's mandamus jurisdiction. When interpreting "criminal law matters" for purposes of our own jurisdiction, "we should be mindful of the potential effect of our construction" upon the jurisdiction of the Court of Criminal Appeals.[20] By declaring that our appellate jurisdiction reaches a certain matter, we thereby define, and potentially limit, the jurisdiction of our constitutional sibling.[21]

**2.**

In this case, we are asked to consider the issues first raised by defendants' plea to the jurisdiction:

- Did the named plaintiffs lack standing to sue?

- Were their claims not yet ripe?

- Did the mooting of their individual claims render this suit moot?

These are questions of justiciability—a doctrine rooted in the Separation of Powers provision[22] and the Open Courts provision[23] of the Texas Constitution.[24] These constitutional provisions—or, more specifically, the justiciability doctrines of standing, ripeness, and mootness that derive from

---

[20] *See In re Johnson*, 280 S.W.3d 866, 872–73 (Tex. Crim. App. 2008).

[21] *See id.*; *State ex rel. Holmes v. Third Court of Appeals*, 885 S.W.2d 386, 410–11 (Tex. Crim. App. 1994) (Clinton, J., dissenting) (arguing that "criminal law matters," as that term is used in Article V, Section 3(a), and Article V, Section 5(c), should be interpreted in the same way to avoid jurisdictional conflicts); *see also Dearing v. Wright*, 653 S.W.2d 288, 289–90 (Tex. 1983) (noting that "[u]nder our dual appellate system, we must concede to those courts the exclusive jurisdictional prerogative in criminal law matters our constitution requires that they exercise").

[22] *See* TEX. CONST. art. II, § 1.

[23] *See id.* art. I, § 13.

[24] *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–45 (Tex. 1993) (explaining basis for standing under Texas Constitution); *see Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 442–43 (Tex. 1998) (same).

them—are the subject of this appeal, "not any provision in the Code of Criminal Procedure nor any other criminal statute."[25] Nor must we provide any "construction of a criminal statute" to answer the justiciability questions here.[26] In other words, no "criminal law is the subject of the litigation."[27] Arguably for this reason alone, this case does not present a "criminal law matter."

But beyond this technical analysis, a more fundamental reason supports our conclusion. The Texas Constitution—the source of the requirements of justiciability in Texas—bars our courts from rendering advisory opinions and limits access to the courts to those individuals who have suffered an actual, concrete injury.[28] By raising the issue of justiciability, defendants ask for a determination of whether the named plaintiffs have suffered an actual injury, and whether there exists a live, non-abstract question of law that, if decided, would have a binding effect on the parties. In short, they ask this Court to determine whether this suit is appropriate for judicial review, or whether the courts should refrain from deciding it.[29]

Thus, the question raised by defendants' plea to the jurisdiction—and the constitutional and pragmatic concerns it engenders—goes to the heart of civil practice. Justiciability is a matter of

---

[25] *See Harrell*, 286 S.W.3d at 318 (holding that a case involving the interpretation of section 501.014 of the Texas Government Code was not a "criminal law matter" because it presented the issue of how to interpret and enforce a civil statute); *In re Johnson*, 280 S.W.3d at 869–74 (same); *see also Smith v. Flack*, 728 S.W.2d 784, 788–89 (Tex. Crim. App. 1987) (holding a case, involving interpretation of article 26.05 of the Code of Criminal Procedure, was a "criminal law matter"); *Curry v. Wilson*, 853 S.W.2d 40, 43 (Tex. Crim. App. 1993) (same).

[26] *See Harrell*, 286 S.W.3d at 319.

[27] *See id.* at 318.

[28] *Tex. Ass'n of Bus.*, 825 S.W.2d at 444.

[29] *See Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001).

concern in every civil case,[30] and remains a live concern from the first filing through the final judgment.[31] Accordingly, the body of Texas jurisprudence on justiciability has developed primarily in this and other courts exercising civil jurisdiction.[32]

This is not to say that justiciability concerns never arise in "criminal law matters" or in cases decided by the Court of Criminal Appeals.[33] However, such concerns would seem to arise rarely, if ever, in classic "criminal proceedings" where a defendant's guilt, innocence, or punishment are at issue,[34] and the relationship between the State and the defendant is "solidly adversarial."[35]

The question here is not simply the justiciability of an individual plaintiff's claim, but whether multiple individual named plaintiffs have a justiciable interest in obtaining the use of a procedural device unique to civil law: the class action.[36] Questions about the justiciability of a party's motion for class certification do not fit neatly into any of the categories of "criminal law

---

[30] *See, e.g.*, *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001) (noting that the justiciability doctrine of standing "is a constitutional prerequisite to maintaining suit").

[31] *See, e.g.*, *Bd. of Adjustment v. Wende*, 92 S.W.3d 424, 427 (Tex. 2002) ("It is well settled that a controversy must exist between the parties at every stage of the legal proceedings, including the appeal.").

[32] The Court of Criminal Appeals has recognized as much: "In Texas, the law of standing has been developed mainly in the courts of civil jurisdiction." *Fuller v. State*, 829 S.W.2d 191, 201 (Tex. Crim. App. 1992), *abrogated on other grounds by Riley v. State*, 889 S.W.2d 290, 301 (Tex. Crim. App. 1993).

[33] *See, e.g.*, *State ex rel. Watkins v. Creuzot*, 352 S.W.3d 493, 504–06 (Tex. Crim. App. 2011) (considering ripeness of criminal defendant's pretrial declaratory judgment claim that the State could not execute him); *Ex parte Bohannan*, 350 S.W.3d 116, 119–20 (Tex. Crim. App. 2011) (analyzing justiciability of parolee's habeas claims); *Gallo v. State*, 239 S.W.3d 757, 780 (Tex. Crim. App. 2007) (assessing justiciability of habeas challenge to the manner of an impending execution); *Ex parte Nelson*, 815 S.W.2d 737, 738–39 (Tex. Crim. App. 1991) (per curiam) (determining applicability of an exception to mootness).

[34] *See Harrell*, 286 S.W.3d at 319 (identifying the "chief features of a criminal proceeding").

[35] *See Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 202 (2008).

[36] *See* TEX. R. CIV. P. 42 (stating rules for suing as a class).

9

matters" identified by this Court or the Court of Criminal Appeals.[37]  Indeed, neither party has identified precedent where the Court of Criminal Appeals even considered issues of justiciability in the class action context.  Nor has either party identified precedent in which that court, or this one, held that questions about justiciability are "criminal law matters"—in the class-certification context or otherwise.  Nor have we discovered any.

This Court, by contrast, has issued numerous opinions on justiciability generally and specifically in the context of class certification.  Given the importance of the subject in civil practice, litigants will no doubt continue to call on us to do so—yet another reason against declaring this a "criminal law matter" and thereby placing it beyond the scope of our appellate jurisdiction.  We conclude that, by holding this to be a civil law matter, we preserve our appellate jurisdiction over a fundamental area of civil law while not encroaching on the jurisdiction of our sister court.

**3.**

Defendants nevertheless contend that this is a "criminal law matter" as it arises from a criminal proceeding.  Specifically, they assert that the appointment of legal counsel for indigent misdemeanor defendants is a criminal law matter; hence allegations about the constitutionality of such procedures are, themselves, necessarily "criminal law matters."

Defendants conflate the merits of the named plaintiffs' claims—which are *not* before this Court—with the justiciability issues which *are* before us.  The only question we are asked to decide is whether the named plaintiffs have a justiciable interest in this case.  The only relief they seek is

---

[37] *See* 43B GEORGE B. DIX & JOHN M. SCHMOLESKY, TEXAS PRACTICE SERIES: CRIMINAL PRACTICE AND PROCEDURE §§ 61:6–8 (3d ed. 2011) (citing cases); 27 TEX. JUR. 3D *Criminal Procedure: Post-trial Proceedings* § 598 (2010) (same).

for us to reverse the court of appeals' dismissal for want of jurisdiction, and to remand the matter so the trial court can decide whether to certify the class. Indeed, given the procedural posture of this case, this is the only relief plaintiffs are able seek in this Court at this time. We are not asked to decide—nor could we decide—whether to certify the purported class, much less how to adjudicate the merits of plaintiffs' constitutional claims.

Admittedly, to answer the justiciability questions raised here, we must refer to some extent to criminal procedure law. But that fact does not render this case a criminal law matter. More than a century ago, this Court noted that "there are criminal cases which may incidentally involve a question of civil law, and civil cases in which in like manner points of criminal law call for solution."[38] The Court of Criminal Appeals appears to have arrived at the same conclusion.[39]

Nor is this the first time we have considered a challenge to a lower court's jurisdiction over what may be a "criminal law matter." In the past, we held that a trial court lacked jurisdiction to issue a declaratory judgment that a penal code provision was unconstitutional or to issue an injunction against its enforcement.[40] We exercised jurisdiction over the jurisdictional question in

---

[38] *Comm'rs' Court v. Beall*, 81 S.W. 526, 528 (Tex. 1904); *see also Harrell*, 286 S.W.3d at 319 (concluding that case was "more civil than criminal").

[39] *See, e.g.*, *Armstrong v. State*, 340 S.W.3d 759, 765 (Tex. Crim. App. 2011) ("An issue does not cease to be a criminal law matter merely because elements of civil law must be addressed to resolve the issue."); *Lanford v. Fourteenth Court of Appeals*, 847 S.W.2d 581, 585 n.3 (Tex. Crim. App. 1993) ("In making th[e] determination [of what constitutes a 'criminal law matter'], we are not bound by the fact that there may be civil law facets to the issue at hand, anymore than the Texas Supreme Court, in determining whether a matter is civil in nature, is bound by the fact that the matter may be quasi-criminal."); *see also In re Johnson*, 280 S.W.3d at 870 ("[R]esolution of the question presented by this mandamus application requires us to scrutinize no criminal-law statute. So, the question arises: Is this a 'criminal law matter' that requires us, incidentally, to examine certain provisions of the civil law for resolution, or is it primarily a civil law matter that happens, incidentally, to emanate from a judgment in a criminal case, but is not otherwise related to criminal law at all?").

[40] *See State v. Morales*, 869 S.W.2d 941, 946–48 (Tex. 1994).

that appeal, regardless of the fact that the underlying merits question—whether the statute was constitutional—was no doubt itself a "criminal law matter" beyond our appellate jurisdiction.

For similar reasons, the fact that we can only answer the justiciability questions here by referring to criminal law cases does not deprive us of appellate jurisdiction. The matter before us deals with justiciability, and therefore falls squarely within our constitutional authority.

### III. Standard and Scope of Review

Having determined this case falls within our appellate jurisdiction, we consider now the subject of the dispute: defendants' plea to the jurisdiction. A plea to the jurisdiction challenges the court's authority to decide a case.[41] Here, defendants challenge plaintiffs' standing as well as the ripeness of their claims, and further assert their claims are moot. These are questions of law we review *de novo*.[42]

The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction.[43] When assessing a plea to the jurisdiction, our analysis begins with the live pleadings.[44] We may also consider evidence submitted to negate the existence of jurisdiction—and we must consider such

---

[41] *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000).

[42] *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004) (standing); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998) (ripeness); *see Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 229 (Tex. 1993) (mootness).

[43] *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

[44] *See id.*

evidence when necessary to resolve the jurisdictional issue.[45] We construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent.[46]

We must grant the plea to the jurisdiction if the plaintiff's pleadings affirmatively negate the existence of jurisdiction.[47] And we must grant the plea if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction.[48]

## IV. Standing

The court of appeals held that not one of the named plaintiffs had standing to pursue *all* of the putative class's claims. The court therefore held that *none* of the named plaintiffs had standing to pursue *any* of the class's claims, or to litigate whether the class should be certified.

According to plaintiffs, the court of appeals has dramatically rewritten the rules of standing. Plaintiffs argue that the court's holding "make[s] pleading an all-or-nothing game where either all claims proceed or no claims proceed." And in any event, plaintiffs assert that several of the named plaintiffs did have standing to pursue each and every one of the class's claims.

Thus, the threshold standing question here is whether a named plaintiff must have standing on *all* of the class's claims in order to pursue *any* of them. We hold that he does not. We further hold, for each claim, that at least one named plaintiff in this case had standing to assert that claim. Thus, the court of appeals erred in dismissing this suit on standing grounds.

---

[45] *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555.

[46] *Miranda*, 133 S.W.3d at 226.

[47] *Id.* at 227.

[48] *See id.* at 226.

13

## A. General Principles

Standing is a constitutional prerequisite to suit.[49] A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it.[50] Thus, if a plaintiff lacks standing to assert one of his claims, the court lacks jurisdiction over that claim and must dismiss it.[51] Similarly, if the plaintiff lacks standing to bring *any* of his claims, the court must dismiss the whole action for want of jurisdiction.[52]

The standing requirements extend to class actions.[53] A plaintiff who brings a class action, rather than just suing on his own behalf, must still prove that he individually had standing to sue.[54] The court must consider this threshold question even before reaching the separate issue of whether it can certify the putative class.[55] Just as it must dismiss a case where the plaintiff lacks standing to bring any of his claims, a court must dismiss a class action for want of jurisdiction if the named plaintiff entirely lacked *individual* standing at the time he sued.[56]

---

[49] *See Sw. Bell Tel. Co. v. Mktg. on Hold Inc.*, 308 S.W.3d 909, 915 (Tex. 2010).

[50] *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008).

[51] *See Andrade v. NAACP of Austin*, 345 S.W.3d 1, 14 (Tex. 2011) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008))).

[52] *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 392 (Tex. 2000) (holding that plaintiff had standing on some claims but not others, and dismissing only those claims for which it lacked standing).

[53] *Sw. Bell Tel. Co.*, 308 S.W.3d at 915.

[54] *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 710 (Tex. 2001).

[55] *Id.*

[56] *Id.* at 711.

These principles provide a starting point for our analysis, but this case raises a further question: What happens if a named plaintiff has individual standing on some, but not all, of the putative class's claims? We turn to this question next.

## B. Must a Plaintiff Have Standing on Each Claim of the Purported Class to Pursue Certification?

The court of appeals concluded that the named plaintiffs, "both individually and collectively, have never had standing to pursue the full claims of the putative class. . . . Thus, there is no plaintiff with standing to pursue the claims of the putative class, nor can there be."[57] Put simply, the court held that a plaintiff cannot seek class certification on *any* claim unless he has individual standing on *every* claim.[58]

We disagree. We see no reason why a plaintiff who seeks to represent a class, but lacks standing on some of the purported class's claims, completely lacks standing to bring *any* claims.

### 1.

The result we arrive at today is implicit in our earlier decisions. In the past, for example, we considered appeals where the trial court had already decided the question of certification and where the named plaintiffs brought similar but not identical claims—and thus had suffered similar but not identical injuries. The solution there, however, was not to dismiss the entire suit on standing

---

[57] __ S.W.3d at __.

[58] *See id.* at __. For this reason, the court held that the named plaintiffs "lack standing to litigate whether that class should be certified." *See id.*

grounds; rather, the solution was for the trial court to certify subclasses to ensure that a named plaintiff had suffered the same injury as the class or subclass.[59]

Federal courts' decisions, too, support our conclusion today.[60] Defendants cite decisions from the U.S. Courts of Appeals for the Fifth and Eleventh Circuits to support their argument that standing is an all-or-nothing enterprise, but these decisions generally support our position, not theirs—and do so in explicit terms.[61] "For every claim, a named plaintiff with standing" appears to be the consensus rule from these federal decisions—a claim survives the initial standing inquiry so long as at least one named plaintiff has standing to bring it.[62] Then, after this inquiry, the court can

---

[59] *See, e.g.*, *Bowden v. Phillips Petroleum Co.*, 247 S.W.3d 690, 698–709 (Tex. 2008).

[60] "Because standing is a constitutional prerequisite to maintaining a suit under both federal and Texas law, we look to the more extensive jurisprudential experience of the federal courts on this subject for any guidance it may yield." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993); *see Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001).

[61] Defendants cite *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987), but neglect to point out language particularly troubling for their position. There, the Eleventh Circuit stated that "each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Id.* at 1483. The court quoted this rule in *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279–80 (11th Cir. 2000), another case defendants cite. There, the court concluded that the named plaintiffs did not have standing to bring all of the class's legal claims. *Id.* at 1283. Rather than dismissing the entire suit on standing grounds, however, the court remanded for a reassessment of which plaintiffs satisfied the typicality requirement. *Id.*
    In *James v. City of Dallas*, another case defendants cite, the Fifth Circuit stated that "at least one named Plaintiff must have standing to seek injunctive relief on each of the claims against [the defendants]." 254 F.3d at 563. However, the court could not possibly have meant that at least one plaintiff must have standing on each and every claim: It held that the two named plaintiffs had standing to bring some claims but not others, and so dismissed just those claims for which both the plaintiffs lacked standing. *Id.* at 573.
    The single case defendants point to which appears to support their position is *Grant v. Gilbert*, 324 F.3d 383, 389–90 (5th Cir. 2003). However, we are unpersuaded by this lone case, especially in light of the authority going the other way.

[62] *See* 1 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 2:5, at 72–73 (5th ed. 2011).

16

consider whether the named plaintiff satisfies the requirements of "commonality," "typicality," "adequacy," and the other prerequisites for certifying a class action.[63]

**2.**

Indeed, our holding—that a plaintiff need not have standing on *all* claims of the purported class in order to seek class certification—is logically required by an implicit but fundamental principle of our standing jurisprudence. Whether considering the standing of one plaintiff or many, the court must analyze the standing of each individual plaintiff to bring each individual claim he or she alleges when that issue is before the court.[64] This principle flows from two sources. First, a plaintiff must demonstrate that the court has jurisdiction over (and the plaintiff has standing to bring) each of his claims;[65] the court must dismiss those claims (and only those claims) over which it lacks jurisdiction.[66] Second, a plaintiff must demonstrate that he, himself, has standing to present his

---

[63] *Id.* § 2:1, at 59 ("[O]n the one hand, the presence of individual standing to raise issues generally, whether or not common to a class, is required from a constitutional perspective. On the other hand, the meeting of such individual standing tests does not automatically entitle the plaintiff to maintain a class action—she must independently satisfy the additional class representation requirements."); *see also* 7AA CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1785.1, at 388–89 (3d ed. 2005) ("Representative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.").

[64] An exception to this rule applies where there are multiple plaintiffs in a case, who seek injunctive or declaratory relief (or both), who sue individually, and who all seek the same relief. There, the court need not analyze the standing of more than one plaintiff—so long as that plaintiff has standing to pursue as much or more relief than any of the other plaintiffs. The reason behind this exception is that, if that plaintiff prevails on the merits, the same prospective relief would issue regardless of the standing of the other plaintiffs. *See, e.g.*, *Andrade*, 345 S.W.3d at 6–7.

[65] *See, e.g.*, *Am. Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801, 805 (Tex. 2001) (noting that "[i]f a claim is not within a court's jurisdiction . . . then it must be dismissed," and concluding that while the trial court erred by dismissing all of the plaintiff's claims for lack of jurisdiction, the court of appeals also erred by reinstating them all).

[66] *Id.*; *see Thomas v. Long*, 207 S.W.3d 334, 338 (Tex. 2006) ("[I]t is proper for a trial court to dismiss claims over which it does not have subject matter jurisdiction but retain claims in the same case over which it has jurisdiction."); *Williams v. Lara*, 52 S.W.3d 171, 185 (Tex. 2001) (dismissing some claims for some parties, some claims for others, and one claim entirely since no one had standing to bring that claim).

claims; the court must dismiss a plaintiff who lacks standing.[67] Thus, each party must establish that he has standing to bring each of the claims he himself alleges—meaning the court must assess standing plaintiff by plaintiff, claim by claim.

The U.S. Supreme Court has analyzed the standing of multiple named plaintiffs in class actions on a plaintiff-by-plaintiff, claim-by-claim basis. It has concluded that such analysis is necessary for two reasons. First, *plaintiff-by-plaintiff* analysis is necessary to ensure that the court exercises jurisdiction only over plaintiffs who individually have standing.[68] "That a suit may be a class action . . . adds nothing to the question of standing."[69] That Court, like this one, has held that named plaintiffs who seek to represent a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."[70]

Second, *claim-by-claim* analysis is necessary to ensure that a particular plaintiff has standing to bring each of his particular claims. "[S]tanding is not dispensed in gross. . . . '[N]or does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the

---

[67] *See S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 307–08 (Tex. 2007) (per curiam).

[68] *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982).

[69] *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976).

[70] *Warth v. Seldin*, 422 U.S. 490, 502 (1975); *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex. 2001).

necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.'"[71] Other federal courts—including the Fifth Circuit—have come to the same conclusion.[72]

We see no reason why the rule should be different whether one plaintiff or many file suit, or whether that suit is brought as an individual or class action. A plaintiff's burden to establish standing does not decrease just because he brings his suit as a class action. He must still show that he has an individual, justiciable interest in the case; the named plaintiff cannot "borrow" standing from the class, nor does he otherwise get a "pass" on standing.[73] This is so because the motivating concern behind the standing inquiry is exactly the same regardless of the form of the suit: "A court that decides a claim over which it lacks jurisdiction violates the constitutional limitations on its authority, even if the claim is denied. . . . [T]he denial of a claim on the merits is not an alternative to dismissal for want of jurisdiction merely because the ultimate result is the same."[74] But this reasoning cuts the other way, too: The fact that a suit is brought as a class action should not *increase* the named plaintiff's burden to establish standing—say, by requiring him to establish standing on each and every one of the class's claims—any more than it *decreases* his burden. The motivating

---

[71] *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996) (quoting *Blum*, 457 U.S. at 999).

[72] *See James*, 254 F.3d at 563–69 (noting that "standing . . . must be addressed on a claim-by-claim basis," concluding that the class representatives had standing to bring some claims but not others, and therefore dismissing only some claims); *see also Pagan v. Calderon*, 448 F.3d 16, 27–30 (1st Cir. 2006) (analyzing standing "plaintiff by plaintiff and claim by claim").

[73] *See M.D. Anderson Cancer Ctr.*, 52 S.W.3d at 710.

[74] *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 307 (Tex. 2008).

19

concern remains the same: to determine whether the court has the constitutional authority to decide the case (or the claim) before it.[75] The burden thus remains the same, too.

### 3.

In short, we hold that where plaintiffs seek to represent a class, a plaintiff need not have standing on each and every one of the class's claims in order to satisfy the standing requirement. So long as an individual plaintiff has standing on *some* claim, he has standing to pursue class certification as to that claim.

### C. Standing of the Parties

We now consider plaintiffs' individual standing. If at least one named plaintiff had individual standing to bring at least one claim, then the court of appeals erred in holding that none of the plaintiffs had standing to sue and therefore erred by dismissing the entire case on that basis.

### 1.

In Texas, the standing doctrine requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court.[76] This parallels the federal test for Article III standing: "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."[77] Given the parallels

---

[75] *See id.* at 304, 307.

[76] *Id.*; *see Neeley v. W. Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 774 (Tex. 2005) ("[S]tanding limits . . . jurisdiction to cases involving a distinct injury to the plaintiff and a real controversy between the parties, which . . . will be actually resolved by the judicial declaration sought." (internal quotation marks omitted)); *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001) (same).

[77] *Allen v. Wright*, 468 U.S. 737, 751 (1984); *see also Todd*, 53 S.W.3d at 305 (repeating this test).

between that test and our own, we turn for guidance to precedent from the U.S. Supreme Court, which has elaborated on standing's three elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."[78]

Under Texas law, as under federal law, the standing inquiry begins with the plaintiff's alleged injury. The plaintiff must be *personally* injured—he must plead facts demonstrating that he, himself (rather than a third party or the public at large), suffered the injury.[79] After all, our Constitution opens the courthouse doors only to those who have or are suffering an injury.[80] As for the injury itself, it "must be concrete and particularized, actual or imminent, not hypothetical."[81] Constitutional harms—whether actual or imminent—are sufficient.[82]

The second element of the standing test requires that the plaintiff's alleged injury be "fairly traceable" to the defendant's conduct.[83] The Supreme Court has described this requirement as

---

[78] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted).

[79] *Lomas*, 223 S.W.3d at 307 ("[A]s a general rule, to have standing an individual must demonstrate a particularized interest in a conflict distinct from that sustained by the public at large.").

[80] *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993); *see* TEX. CONST. art. I, § 13 (Open Courts provision).

[81] *Inman*, 252 S.W.3d at 304–05 (citations omitted).

[82] *See, e.g.*, *Neeley*, 176 S.W.3d at 774.

[83] *Allen*, 468 U.S. at 751.

ensuring that a "court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court."[84] This Court, too, has previously looked to see whether a defendant's conduct has personally injured the plaintiff as part of the standing inquiry.[85] While it might not be intuitively obvious to think of "traceability" as a part of the standing analysis, "[t]he underlying concerns . . . are similar. Just as there must be a means of identifying proper plaintiffs, so there must be a means of identifying proper defendants."[86]

The third element of standing requires that the plaintiff's alleged injury be "likely to be redressed by the requested relief,"[87] and the plaintiff "must demonstrate standing separately for each form of relief sought."[88] The Supreme Court's description of this element is consonant with Texas law.[89] If, for example, a plaintiff suing in a Texas court requests injunctive relief as well as damages, but the injunction could not possibly remedy his situation, then he lacks standing to bring that claim.[90] To satisfy redressability, the plaintiff need not prove to a mathematical certainty that the

---

[84] *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976).

[85] *See, e.g.*, *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 850 (Tex. 2005).

[86] 13A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3531.5, at 385 (3d ed. 2008).

[87] *Allen*, 468 U.S. at 751.

[88] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

[89] *See, e.g.*, *Wilson v. Andrews*, 10 S.W.3d 663, 669 (Tex. 1999).

[90] *See Williams v. Lara*, 52 S.W.3d 171, 184–85 (Tex. 2001).

requested relief will remedy his injury—he must simply establish a "substantial likelihood that the requested relief will remedy the alleged injury in fact."[91]

The standing inquiry "requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted."[92]

## 2.

In this case, four plaintiffs (Heckman, Maisenbacher, Peterson, and Newberry) sued six defendants (Williamson County, its constitutional county judge, three of its county court at law judges, and its magistrate judge, all in their official capacities), claiming that defendants violated three of their constitutional pretrial rights (counsel, self-representation, and open-court proceedings). A fifth plaintiff (Stempko) joins in this last claim.

Because they sued on behalf of themselves and a putative class, at least one named plaintiff must have had standing at the time he or she joined this suit.[93] We begin our standing analysis with Heckman and his claims.

---

[91] *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000). Note that, under federal law, the plaintiff need not show that a favorable decision will relieve every single one of the plaintiff's alleged injuries—the plaintiff simply must show that "a favorable decision will relieve a discrete injury to himself." *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982).

[92] *Allen*, 468 U.S. at 752.

[93] *See M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 710–11 (Tex. 2001); *see also Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) ("[T]he standing inquiry . . . focuse[s] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed.").

## a. Right-to-Counsel Claim

Heckman claims that defendants violated his right to counsel under the U.S. Constitution[94] and the Texas Constitution.[95] This right attaches when the criminal defendant first appears before a judicial officer.[96] Pleading under section 1983 of the Civil Rights Act of 1871,[97] Heckman asserts that defendants, "acting under color of the laws of the State of Texas, have deprived, and conspired to deprive, and have allowed to be deprived, indigent persons accused of crimes in Williamson County for which there is a possibility of imprisonment as punishment of their right to counsel." We conclude Heckman pleaded facts sufficient to establish that he had standing on this claim at the time of filing.

### i. Injury

Heckman claims that at his first appearance,[98] he was not told about his right to a court-appointed attorney or the standards for determining eligibility for court-appointed counsel, or told how to apply for one. He asserts that he requested a court-appointed attorney, informed the court that he could not afford one on his own, and provided proof of his indigency; in response, the court

---

[94] U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."). The Sixth Amendment right to counsel applies to the states via the Due Process Clause of the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 339–45 (1963).

[95] TEX. CONST. art. I, § 10 ("In all criminal prosecutions the accused . . . shall have the right of being heard by . . . counsel . . . .").

[96] *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 202 (2008).

[97] *See* 42 U.S.C. § 1983.

[98] At the "first appearance," the court fixes the identity of the accused and hears his plea. *See* TEX. CODE CRIM. PROC. art. 26.02.

24

allegedly implied that Heckman did not look like he would qualify for court-appointed counsel because he looked healthy enough to work and was wearing nice clothes. Heckman claims that the court did not ask him any questions about his ability to pay for an attorney. The court allegedly threatened Heckman that it would raise his bond if he did not have an attorney at his next appearance. Notwithstanding his request, at the time of filing Heckman had not been appointed an attorney and the charges against him were still pending.

Defendants have not offered any evidence to refute these jurisdictional facts. Rather, they contend that Heckman's right-to-counsel claims were rendered moot by subsequent events. But subsequent events have no effect on whether, at the time of filing, Heckman was suffering from an injury sufficient to give him standing to sue. That is our inquiry here.[99]

We conclude that Heckman has pleaded jurisdictional facts sufficient, for standing purposes, to establish that at the time he sued he was suffering from an injury-in-fact. The facts are sufficiently personal to him (rather than a third party or the general public);[100] they are concrete, particularized and definite because he already suffered them (and was continuing to suffer them);[101] and they are an invasion of a specific right—Heckman's individual, constitutional right to counsel.

---

[99] *See M.D. Anderson Cancer Ctr.*, 52 S.W.3d at 710. In Section V, *infra*, we consider whether these subsequent events (and others) may have mooted plaintiffs' claims.

[100] *See S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 307 (Tex. 2007) (per curiam).

[101] *See DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 288, 304–05 (Tex. 2008).

## ii. Traceability

Heckman levels his right-to-counsel claim against all six defendants. With regards to Williamson County, he asserts it "is responsible for the provision of indigent defense services within its borders." Heckman traces this responsibility to the Texas Fair Defense Act[102] which, according to Heckman, has delegated to the various counties the responsibility of providing effective counsel to indigent individuals who are entitled to it. Heckman asserts that "Williamson County has a policy, pattern, and practice of denying legal representation to poor individuals accused of misdemeanor offenses punishable by imprisonment."

We conclude that Heckman has pleaded facts sufficient, for standing purposes, to establish that his alleged injuries may be "fairly trace[d]" to Williamson County.[103] We note that Heckman has not shown exactly what responsibility Williamson County bears for his alleged injuries. But he is not required to do so at this stage in the litigation.[104] He must merely show that his injuries are "fairly traceable" to defendants. Heckman has done so here as to the County.[105]

---

[102] *See* Act of June 14, 2001, 77th Leg., R.S., ch. 906, 2001 Tex. Gen. Laws 1800; *see also* TEX. GOV'T CODE §§ 71.061(a), .062.

[103] *See Allen*, 468 U.S. at 751.

[104] *See Inman*, 252 S.W.3d at 304 ("[A] plaintiff does not lack standing simply because he cannot prevail on the merits of his claim.").

[105] To that end, we note that the U.S. Supreme Court recently considered the merits of a section 1983 claim against another Texas county for violating a criminal defendant's constitutional right to counsel. *See generally Rothgery v. Gillespie Cnty.*, 554 U.S. 191 (2008). While the Court did not expressly consider the question of standing, it considered the merits of the question there: whether the right to counsel attaches at the "magistration" proceeding. *See id.*

26

With regards to the other defendants—Williamson County's constitutional county judge, three of its county court at law judges, and its magistrate judge—we note that they vigorously deny having personally committed any constitutional deprivations. They assert that, to the extent Heckman was denied counsel, this was attributable to the actions of a visiting judge from another county.[106] Plaintiffs respond that the alleged deprivations were the result of a custom or practice carried out in the courts of the named defendants.

Regardless of who is correct (both sides may be), we note that plaintiffs indisputably have sued the individual judges only in their official capacities. A suit under section 1983 against a government official in his official capacity "is not a suit against the official but rather is a suit against the official's office," although such a suit is treated as a suit against a "person" under section 1983 when the plaintiff seeks prospective injunctive relief, as plaintiffs seek in this suit.[107]

Finally, our decision today should not be read to suggest any opinion about whether plaintiffs' allegations against these particular judges have merit.

### iii. Redressability

Heckman, like the other named plaintiffs, sought injunctive and declaratory relief to remedy the alleged injuries to his right to counsel.

We conclude that Heckman has pleaded sufficient facts to establish that, at least at the time of filing, his injuries were "likely to be redressed by the requested relief."[108] In fact, this is true of

---

[106] That judge, the Honorable Bob Jones of Travis County, is not a party to this suit.

[107] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 71 n.10 (1989).

[108] *Allen*, 468 U.S. at 751.

27

both forms of relief sought. As we noted above, Heckman asserts that at the time he joined this suit, he still had not been appointed an attorney—in other words, that defendants had violated and were continuing to violate his constitutional right to counsel. Heckman sought a declaration that defendants' practice of denying court-appointed counsel to a person who posts bond violated his rights.[109] He also sought an injunction which, in relevant part, would have required the court to fairly evaluate his request for court-appointed counsel and, if appropriate, to appoint a lawyer to represent him.[110] Each form of relief would have remedied, in some way, Heckman's alleged injury. Therefore, each independently satisfies the redressability requirement.

Because Heckman has established injury, traceability, and redressability, he had standing to claim that defendants violated his constitutional right to counsel at the time he sued.

---

[109] The relevant portion of plaintiffs' request for declaratory relief is as follows:

(C) that Defendants' practice of denying counsel to persons accused of crime for which a punishment of imprisonment is possible and who are able to post bond, or whose family members and friends post bond on their behalf, when such persons are not financially able to hire a lawyer violates the United States Constitution, the Texas Constitution, and the Texas Code of Criminal Procedure . . . .

[110] The relevant portion of plaintiffs' request for injunctive relief is as follows:

(C) Defendants fairly evaluate the requests for appointment of counsel made by all persons accused of an offense for which a punishment of imprisonment is possible in Williamson County, following the guidelines and standards contained in Texas law and local rule, without reference to whether the accused person's family and/or friends are able to post bond or to whether the accused person is physically unable to work . . . .

### b. Self-Representation Claim

Heckman claims that defendants "deprived and conspired to deprive" him of his constitutional right to represent himself. The U.S. Constitution implicitly protects this right,[111] and the Texas Constitution does so explicitly.[112]

In plaintiffs' second amended class action petition (their live pleading), Heckman claims that "court officials" pressured him to plead guilty or no contest to the charges against him and encouraged him to speak with a prosecutor without the aid of an attorney. His assertion appears to be that these actions, combined with defendants' ongoing violation of his right to counsel, violated his constitutional right to represent himself.

The legal theory behind this claim isn't exactly clear from the live pleadings, but plaintiffs' briefs provide some guidance. The argument appears premised on the rule that, while a criminal defendant has a right to represent himself, to do so he must first knowingly and voluntarily waive his right to counsel.[113] And, Heckman notes, a criminal defendant can make the requisite waiver only after having been informed of his constitutional right to an attorney—and all that right entails.[114]

We conclude that Heckman has pleaded facts sufficient to establish an injury-in-fact. As for "traceability," the analysis that applied to Heckman's right-to-counsel claim applies equally here,

---

[111] *Faretta v. California*, 422 U.S. 806, 818–19 (1975); *see* U.S. CONST. amend. VI.

[112] TEX. CONST. art. I, § 10 ("In all criminal prosecutions the accused . . . shall have the right of being heard by himself . . . .").

[113] *See Faretta*, 422 U.S. at 835.

[114] *See Miranda v. Arizona*, 384 U.S. 436, 473 (1966); 3B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 733, at 70–71 (3d ed. 2004).

29

given that this claim is based in part on that one. Finally, redressability is satisfied as it appears reasonable to assume that the same relief analyzed above had a likelihood of remedying this alleged injury.[115]

Echoing the court of appeals, defendants argue that Heckman cannot claim a violation of his right to self-representation because he never asked to represent himself—rather, he requested court-appointed counsel.[116] But this misses the thrust of Heckman's argument. According to Heckman, defendants simultaneously misinformed (or under-informed) him of his right to counsel and denied his request for court-appointed counsel, yet encouraged or forced him to do certain acts (enter a plea, speak unrepresented with the prosecution) that constitute self-representation. The argument is that these actions—forcing Heckman to represent himself without first obtaining a knowing and voluntary waiver—constitute a violation of his right to self-representation.

Assuming as we must that all his factual assertions are true (unless disproven by defendants), and making all reasonable assumptions in his favor, we conclude that Heckman had standing to bring this claim when he filed suit.

### c. Open-Courts Claim

Heckman claims that defendants violated his right to open-court proceedings. The U.S. Constitution explicitly guarantees public proceedings for a criminal defendant.[117] Heckman asserts

---

[115] Heckman requests other injunctive and declaratory relief that may also have relieved his alleged injury.

[116] *See* __ S.W.3d at __.

[117] U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."). This right applies to the states. *Presley v. Georgia*, 130 S. Ct. 721, 723 (2010).

that the Texas Constitution does the same.[118]  Here, Heckman claims that defendants "routinely" deprive criminal misdemeanor defendants of these rights by "acquiescing in or condoning the prohibition or prevention of members of the public from entering and observing proceedings in which persons are accused of violating the criminal laws of the State of Texas."

We conclude that Heckman has failed to establish the requisite injury-in-fact: He has not alleged that he, personally, was suffering from a deprivation of his right to open-court proceedings at the time he filed suit, or that he faced an imminent deprivation of this right.  In their live pleading, plaintiffs allege that such deprivations occur in Williamson County during magistration and during the first appearance docket.[119]

But Heckman had already undergone both of these proceedings by the time he filed suit, meaning he no longer suffered from this alleged injury.  This in turn means that the alleged prior deprivations of his right to open-court proceedings cannot provide a basis for his claim for prospective relief: Because we do not assume recidivism, we cannot assume that he may undergo these alleged deprivations again in the future.[120]  Further, Heckman did not attempt to demonstrate that he might be deprived of this right at any future proceeding—that is, any proceeding that comes

---

[118] *See* TEX. CONST. art. I, § 13 ("All courts shall be open . . . .").

[119] For example, plaintiffs allege that when criminal defendants appear before the Williamson County magistrate, "[t]hese proceedings are held in a secure area within the jail and are not open to family members or members of the public."  Plaintiffs allege similar facts about the first appearance docket: "A bailiff is standing at the door to the courtroom and tells people attempting to enter the courtroom that only persons with cases on the docket are allowed in the courtroom. . . . Bailiffs stationed inside the courtroom also repeatedly ask whether there are any family members or members of the public inside the courtroom, and order any person who does not have a case on the first appearance docket to leave the courtroom."

[120] *Williams v. Lara*, 52 S.W.3d 171, 184–85 (Tex. 2001).

31

after the first appearance docket. Under our standing jurisprudence, a plaintiff must plead facts sufficient to demonstrate that he, himself, has suffered or will imminently suffer an injury—not that other people did (or will).[121] Heckman's failure to do so deprives him of standing to bring this claim. Because he has failed to show the requisite injury-in-fact, we need not consider the other elements of the standing test.[122]

## 3.

In sum, we conclude that at the time he joined this suit, Heckman had standing to claim that Williamson County violated his right to counsel and his right to self-representation. In light of our holding that a named plaintiff need not have standing on every claim of the putative class, we hold that Heckman's standing on these claims gave him standing to pursue certification of the putative class.

---

[121] *E.g.*, *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 307 (Tex. 2007) (per curiam).

[122] We note that at least one named plaintiff appears to have demonstrated standing on this claim. At the time Jessica Stempko joined this suit, her daughter Kelsey stood accused of a misdemeanor offense. Her daughter had already appeared before a magistrate and was anticipating an imminent "first appearance." Jessica Stempko wanted to attend.

But at the time she joined this suit, Williamson County had a published policy of preventing any non-defendants from attending a first appearance. The record includes a printout from the county attorney's website announcing the following: "Due to the limited only [sic] space, only the defendant is allowed in the courtroom for the first appearance setting. (No children, spouses, parents, or friends.)"

In light of Williamson County's stated and published rule, Jessica Stempko alleged that she likely would be denied access to her daughter's first appearance. And the right to a public trial belongs to members of the public just as it does to the accused. *Presley*, 130 S. Ct. at 723.

Thus, Jessica Stempko has pleaded facts sufficient, for standing purposes, to establish that she faced an imminent deprivation of her constitutional right to open-court proceedings. *See Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) ("[T]he injury required for standing need not be actualized. A party facing prospective injury has standing to sue where the threatened injury is real, immediate, and direct."); *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998). Further, it seems reasonable to assume that this alleged injury is "fairly traceable" to Williamson County. And it seems that redressability is satisfied, too: Plaintiffs requested injunctive and declaratory relief that would require "defendants [to] allow members of the public access to court proceedings, including magistration and first appearance proceedings" and would declare that defendants' policy of doing otherwise "violates the United States Constitution and the Texas Constitution."

The court of appeals concluded that none of the named plaintiffs had individual standing to sue. The fact that Heckman did have standing on some claims is sufficient to conclude that the court of appeals erred. Therefore, we need not determine what claims, if any, the other named plaintiffs had standing to bring and whether those claims were ripe. We remand the remaining standing issues to the trial court, which must consider these issues before proceeding to the question of certification.[123]

## V. Mootness

The court of appeals concluded that this suit is moot.[124] Defendants assume that position in this Court. They argue that plaintiffs' individual claims became moot once they were appointed counsel and certainly once their criminal cases ended. Defendants further argue that, in any event, the claims of the entire putative class are now moot in light of the changes Williamson County has made to its counsel-appointment policies. Finally, defendants argue that none of the exceptions to mootness apply here.

We disagree. While plaintiffs' individual claims are now moot, that does not dispose of this case. In the past, we have recognized—but have not adopted—exceptions to mootness in the class action context.[125] Today, we adopt and apply such an exception, applicable to claims that are inherently transitory.

---

[123] *See M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 711 (Tex. 2001).

[124] __ S.W.3d at __.

[125] *See M.D. Anderson Cancer Ctr.*, 52 S.W.3d at 708–09.

However, we are unable to conclude whether these claims qualify for the exception in light of intervening events in Williamson County. Therefore, we remand to the trial court to determine whether there likely still exists a class of individuals suffering from the same alleged deprivations of constitutional rights.

## A. General Principles

Just as the Texas Constitution bars our courts from deciding a case when the plaintiff lacks standing,[126] similarly, a court cannot not decide a case that has become moot during the pendency of the litigation.[127] A case becomes moot if, since the time of filing, there has ceased to exist a justiciable controversy between the parties—that is, if the issues presented are no longer "live," or if the parties lack a legally cognizable interest in the outcome.[128] Put simply, a case is moot when the court's action on the merits cannot affect the parties' rights or interests.[129] If a case is or becomes moot, the court must vacate any order or judgment previously issued and dismiss the case for want of jurisdiction.[130]

Here, defendants assert—and plaintiffs concede—that all of plaintiffs' individual claims have become moot since they joined this lawsuit. We agree. After joining this suit, each of the named plaintiffs was appointed counsel. Thus, they could no longer claim that defendants were still

---

[126] *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–45 (Tex. 1993).

[127] *Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999).

[128] *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001).

[129] *VE Corp. v. Ernst & Young*, 860 S.W.2d 83, 84 (Tex. 1993) (per curiam).

[130] *See Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 229–30 (Tex. 1993).

34

violating their constitutional right to court-appointed counsel. Furthermore, in the years since plaintiffs filed this suit, all of the criminal cases against them have been resolved. As a result, they no longer have a cognizable interest in obtaining injunctive or declaratory relief from defendants' alleged violations of their, and the putative class's, criminal procedure rights.[131] And because the only relief plaintiffs sought was injunctive and declaratory in nature—that is, they did not seek damages—the individual named plaintiffs no longer have a cognizable interest in the outcome of the case.

Under normal circumstances, we would dismiss for want of jurisdiction.[132] In this case, however, plaintiffs sought class certification. They claim that despite the mooting of their *individual* claims, the relation-back exception saves the *lawsuit* itself from being moot. We turn to this question next.

### B. Exceptions to Mootness in Class Actions

In a typical civil action, where a solo plaintiff brings a claim on his own behalf, the mootness analysis is usually straightforward: If the plaintiff's individual interest becomes moot, the entire suit ordinarily becomes moot. In a class action, however, the plaintiff brings a claim not just on his own behalf, but on behalf of an entire class of similarly-injured individuals. There, the named plaintiff's individual interest can become moot without necessarily affecting the class's interest in how the suit turns out. If a class of plaintiffs continues to have a live claim against the defendant notwithstanding the mooting of the named plaintiff's claim, then there will exist a tension between the mootness of

---

[131] *See Williams*, 52 S.W.3d at 184.

[132] *See id.*; *Speer*, 847 S.W.2d at 228.

35

the named plaintiff's individual interest on the one hand, and the continuing vitality of the class's claim on the other.[133]

The existence of that tension leads to the question of whether there should be an exception to mootness in such circumstances. Indeed, the mootness question in this case is a by-product of that tension: Should a class action lawsuit survive when the individual claim of the named plaintiff becomes moot? This appears to be a question of first impression in this Court. By contrast, federal courts have extensively explored mootness in the class action context and have developed a body of exceptions that alleviate some of this tension. We therefore turn to their decisions for guidance.[134]

**1.**

Federal caselaw draws a bright line between two categories of class actions: those where the named plaintiff's interest becomes moot *before* the court decides on certification, and those where that happens *afterwards*. While they treat the two categories somewhat differently,[135] federal courts have carved out exceptions to mootness in each. Where, as here, the individual claims of the named

---

[133] 13C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3533.9.1, at 523 (3d ed. 2008).

[134] *See Tex. Ass'n of Bus.*, 852 S.W.2d at 444.

[135] In the latter category of cases, the class action as a whole will generally not become moot, even if the named plaintiff's individual claims do. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 404 (1980); *Sosna v. Iowa*, 419 U.S. 393, 399–402 (1975); ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 2.5.5, at 144–47 (5th ed. 2007).

But the Supreme Court has explicitly declined to extend this automatic "class action exception" to the former category of cases. *See* 1 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 2:11, at 110 (5th ed. 2011). Most federal appellate courts have done the same. *See id.* § 2:11, at 111 n.9 (citing cases from nearly every federal court of appeals). The result is a very bright line rule: If the named plaintiff's individual claims become moot *after* the trial court rules on certification, the suit will usually survive automatically, while if this happens *before*, the suit can survive only if another exception to mootness applies.

Here, the named plaintiffs' claims became moot before the trial court had time to decide whether to certify the class. Given the weight of federal authority, we decline to apply the automatic "class action exception" to mootness beyond the bounds of the Supreme Court's own caselaw. Therefore, if this class action is to survive the mooting of the named plaintiffs' individual claims, it must do so under another exception.

plaintiffs become moot before the trial court decides whether to certify the class, the class action may still survive so long as it fits the rubric of one of the courts' limited exceptions.[136]

One such exception applies to "inherently transitory" claims. This exception is premised on the idea that some claims, by their nature, are so short-lived that it may be impossible for the trial court to decide on certification before the named plaintiff's individual claims become moot.[137] At the same time, regardless of the mooting of the named plaintiff's claims, there continues to exist a population of individuals who suffer from the same alleged harms and therefore have the same inherently transitory claims against the same defendant.[138] Such a claim, therefore, would apply to many people, yet simultaneously would never be subject to judicial review because it would continuously become moot before a judge could certify the putative class.

Thus the U.S. Supreme Court has applied an exception to mootness to prevent such claims—and the underlying behavior of the defendants—from completely evading review by the courts. The exception is available where a population as a whole retains a live claim against the defendant, but the individual membership of that population is always changing due to the short-lived nature of the claim.[139]

---

[136] *See, e.g.*, *Geraghty*, 445 U.S. at 398–400; *Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134, 1139 (10th Cir. 2009) (noting several such exceptions).

[137] *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991).

[138] *See Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975).

[139] 1 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 2:13, at 122 (5th ed. 2011). An example of an inherently transitory claim is a challenge to the length of time an arrestee must wait in jail before receiving a judicial determination of probable cause as required by the Fourth Amendment. *See McLaughlin*, 500 U.S. at 51–52. If the only relief sought is injunctive and declaratory, the named plaintiff's individual claims may very well become moot as soon as he receives his probable cause hearing. But notwithstanding the mooting of the named plaintiff's individual claims,

The mechanism that animates this exception is the relation-back doctrine: The court's decision on certification is deemed to "relate back" to the moment when the named plaintiff first filed the suit—a time when there still existed a live dispute between the named plaintiff and the defendant.[140] Relating class certification back to the filing of the class complaint means the named plaintiff is deemed to have standing to litigate the certification question, even though his individual claims are moot.[141] By its terms, however, "relation back" is not available in a case where the named plaintiff lacked standing from the beginning—in such a case, there was no live controversy between the parties, completely depriving the court of jurisdiction.[142] The relation-back doctrine puts the case in the framework discussed above, whereby the subsequent mooting of the named plaintiff's individual claim, after a decision on certification, does not necessarily moot the entire class action.

We note that the exception for "inherently transitory" claims is different and distinct from the exception for claims that are "capable of repetition, yet evading review"[143]— an exception to mootness which we have previously recognized.[144] The two are similar in that the latter, like the

there may continue to exist a body of people out there who still have the same claims and suffer the same injuries that the named plaintiff once did—arrestees stuck in jail for an unconstitutionally long time awaiting what should have been a prompt probable cause determination. Individual claimants move in and out of that class with the passage of time, but a body of such claimants continues to exist so long as the alleged harm persists.

[140] *See Geraghty*, 445 U.S. at 398–400.

[141] *Olson v. Brown*, 594 F.3d 577, 582–84 (7th Cir. 2010).

[142] 13C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3533.9.1, at 521 (3d ed. 2008); *see M.D. Anderson Cancer Ctr.*, 52 S.W.3d at 711.

[143] *See, e.g.*, *Geraghty*, 445 U.S. at 398–99; *Clark*, 590 F.3d at 1139.

[144] *See Tex. A & M Univ. - Kingsville v. Yarbrough*, 347 S.W.3d 289, 290–91 (Tex. 2011).

former, requires a claim that is short-lived.[145] The two exceptions differ, however, in that the "capable of repetition" exception generally applies only if the plaintiff can show that the claim is capable of repetition *as to him*.[146]

Thus, to qualify for the exception for "inherently transitory" claims, the named plaintiff must show two things: First, that the claim is one of short duration,[147] and second, that there likely exists a continuing class of persons suffering the same alleged harm as the named plaintiff.[148]

**2.**

We adopt the federal exception to mootness for "inherently transitory" claims. As discussed above, Texas courts generally lack the authority to decide a case if it ceases to be "live" or if the parties no longer have a cognizable interest in the outcome of the case.[149] However, we conclude that the "inherently transitory" claims exception, as described above, ensures that there remains a live interest between the class of affected individuals—thereby satisfying constitutional justiciability concerns. And, like the exception for claims that are "capable of repetition yet evading review," this exception also enables our courts to review claims of governmental deprivation of constitutional rights that might otherwise be unreviewable.

---

[145] *See id.*

[146] *See Geraghty*, 445 U.S. at 398–99; *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001).

[147] *McLaughlin*, 500 U.S. at 52; *Swisher v. Brady*, 438 U.S. 204, 213 n.11 (1975).

[148] *Olson*, 594 F.3d at 582; *see Swisher*, 438 U.S. at 213 n.11; *Gerstein*, 420 U.S. at 110 n.11; *Sze v. I.N.S.*, 153 F.3d 1005, 1010 (9th Cir. 1998); *Zurak v. Regan*, 550 F.2d 86, 91–92 (2d Cir. 1977).

[149] *Williams*, 52 S.W.3d at 184.

### C. Application

Here, we conclude that plaintiffs' claims are sufficiently short-lived to satisfy the first element of the exception to mootness for inherently transitory claims. However, in light of the intervening events noted by defendants, we are unable to determine whether the claims of the putative class are now moot. Thus we are unable to determine whether the claims here satisfy the second element of the exception, or whether there no longer exists a class having these same constitutional claims.

### 1.

The claims at issue—that defendants violated plaintiffs' constitutional rights to counsel, self-representation, and open courts—satisfy the first element of the exception. As the U.S. Supreme Court has noted, "criminal trials are typically of 'short duration.'"[150] Indeed, of the four underlying criminal cases that gave rise to this civil suit, three ended well before the trial court ruled on defendants' plea to the jurisdiction—much less even considered the petition for certification.[151] Elsewhere, we have noted that an inmate's time in jail "may be so short that it would be unlikely"

---

[150] *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 603 (1982) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 563 (1980).

[151] The record includes data that illustrates just how short-lived a Texas misdemeanor case can be. In the trial court, plaintiffs cited studies from Hidalgo and Bexar Counties indicating that, for misdemeanor defendants who (like these plaintiffs) faced possible jail time, *even after they were appointed counsel* the average time from arrest to first appearance was about a month, and the average time from first appearance to final disposition was about another month. And, of course, magistration itself must generally occur within 24 hours of arrest. *See* TEX. CODE CRIM. PROC. art. 15.17(a). Plaintiffs further allege that the defendant county court at law judges have the practice of pressuring misdemeanor defendants to plead out at their first appearance. If true, this practice would further shorten the amount of time those cases remain "live"—meaning even less time to challenge the unconstitutional deprivation of their pretrial rights.

40

for him to be able to challenge his prison conditions without his challenge becoming moot.[152] The U.S. Supreme Court has come to the same conclusion when faced with challenges to pretrial detention,[153] and to parole release guidelines.[154] Thus we conclude that plaintiffs' right-to-counsel, self-representation, and open-courts claims "are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires."[155]

## 2.

However, we are unable to determine whether plaintiffs' claims satisfy the second element of the "inherently transitory" exception. On the one hand, plaintiffs' pleadings indicate that there was a widespread, systematic "custom or practice" in Williamson County of depriving indigent misdemeanor defendants of various pre-trial constitutional rights. By itself, this would appear to be enough to establish the alleged violations are likely to recur with regards to other members of an enduring class of individuals.[156]

On the other hand, defendants point to a number of recent changes in the law and in the County. All of these changes occurred after plaintiffs sued. Defendants assert these changes have mooted this suit by remedying all of the claims of the putative class.

---

[152] *Williams*, 52 S.W.3d at 184.

[153] *McLaughlin*, 500 U.S. at 51–52; *Gerstein*, 420 U.S. at 110 n.11.

[154] *See Geraghty*, 445 U.S. at 399.

[155] *See McLaughlin*, 500 U.S. at 52 (quoting *Geraghty*, 445 U.S. at 399).

[156] *See, e.g.*, *Olson*, 594 F.3d at 583–84.

41

First, defendants apparently have adopted a new policy for appointing counsel to indigent criminal defendants in Williamson County.[157]  Defendants assert this new plan provides additional protections for anyone needing a court-appointed attorney.  Next, they point to a recently enacted statute that changed the requirements for appointing counsel to indigent defendants,[158] and to recent federal court opinions that have changed the law governing indigent defense.[159]  Defendants assert that the new policy complies with these changes.  This suit was initiated when another policy was in place—now that the County has a new policy, defendants argue that plaintiffs must initiate a new suit if they want to bring their constitutional claims.  Finally, defendants assert that Williamson County has hired an additional "magistrate lawyer" as well as an "indigent defense coordinator to ensure that everyone who is entitled to a court-appointed attorney and requests [same] will get one." All of these intervening events, according to defendants, have mooted the class's claims and thus mooted this class action.

We disagree.  Defendants are correct that a suit can become moot at any time, including on appeal, and we agree that the courts have an obligation to take into account intervening events that may render a lawsuit moot.[160]  Further, defendants are right that where a plaintiff challenges a statute

[157] The County's revised policy is not part of the record from the trial court, as defendants adopted it some time after filing their interlocutory appeal.  They did, however attach a copy to one of their supplemental briefs to the court of appeals.

[158] *See* Act of June 16, 2007, 80th Leg., R.S., ch. 463, 2007 Tex. Gen. Laws 821.

[159] *See Rothgery v. Gillespie Cnty.*, 554 U.S. 191 (2008); *Davis v. Tarrant Cnty.*, 565 F.3d 214 (5th Cir. 2009).

[160] *See, e.g.*, *Williams*, 52 S.W.3d at 184; *City of Garland v. Louton*, 691 S.W.2d 603, 604 (Tex. 1985) (per curiam).

or written policy, that challenge may well become moot if the statute or policy is repealed or fundamentally altered.[161]

But here, defendants' bald assertion that they are now in compliance with the law is simply not enough to establish that the claims of the putative class are now moot. The focus of plaintiffs' complaint is on defendants' *actions* and *behavior*, not their written policies. Nowhere in their pleadings do they assert that the written policies in place are somehow unconstitutional. Plaintiffs allege, after all, that defendants' "custom and practice" is to systematically and deliberately deprive indigent misdemeanor defendants of their constitutional rights. This allegation no more hinges on the constitutionality of the current official policy than it did on the previous one.

Indeed, plaintiffs might argue that defendants violated their constitutional rights *in spite of* the then-existing policy. Thus, the existence of new written policies may have no practical effect on how defendants actually treat individuals who appear in Williamson County's courtrooms. Defendants may be depriving indigent criminal defendants of their constitutional pre-trial rights now just as plaintiffs allege they did in the past.

Similarly, bald statements that Williamson County has hired additional staff, allegedly for the purpose of helping provide legal advice to indigent criminal defendants, falls well short of establishing that all of the class's claims are now moot.

---

[161] *See, e.g.*, *Trulock v. City of Duncanville*, 277 S.W.3d 920, 925–27 (Tex. App.—Dallas 2009, no pet.); *see generally* ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 2.5.4, at 141–43 (5th ed. 2007).

We therefore remand this matter to the trial court to determine whether intervening events have truly mooted the claims of the putative class.[162]  If the trial court concludes that there likely exists a constant class of persons suffering the same deprivations, then it should not find that this class action is moot.  Indeed, the case is moot only if the new policies in fact remedy each and every one of the putative class's constitutional claims—if even one issue remains live between defendants and the putative class, the suit as a whole is not moot.[163]  Because the facts pleaded here are sufficient to establish that a continuing class likely used to exist, and because defendants now argue that intervening events have mooted the class's claims, the burden is on defendants to establish this—cursory, blanket statements to this effect will not be enough.

Absent such a showing, the suit is not moot: A class of individuals, consisting of criminal defendants who share many or all of these claims with the named plaintiffs, would still likely exist and would still have a live, justiciable controversy with defendants.[164]  The trial court should then proceed to the question of certification, which will "relate back" to the moment when the named plaintiffs first filed the suit—a time when there still existed a live dispute with defendants.[165]  Thanks

---

[162] *See* 13C CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3533.7, at 365–66 (3d ed. 2008); *see also United States v. Brandau*, 578 F.3d 1064, 1067–70 (9th Cir. 2009) (remanding case for further proceedings to determine whether subsequent events had truly mooted plaintiff's claims).

[163] *See Camarena v. Tex. Emp't Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988).

[164] *See Williams*, 52 S.W.3d at 184.

[165] *See Geraghty*, 445 U.S. at 398–400.

44

to the relation-back doctrine, the named plaintiffs—that is, those with standing—will still have standing to litigate the certification question, even though their individual claims are moot.[166]

## VI. Conclusion

The court of appeals erred in concluding that a named plaintiff must have standing on each of the class's claims in order to seek class certification. Thus, the court erred in vacating the trial court's denial of defendants' plea the jurisdiction and in dismissing this case for want of subject-matter jurisdiction. At least one named plaintiff had standing to bring at least one of the class's claims. Finally, the court of appeals erred in concluding that the claims of the putative class are now all moot.

On remand, the trial court should determine whether "intervening events" have resolved (and thereby mooted) the constitutional claims of the class, or if instead the class maintains a live dispute with defendants. If the trial court finds the latter to be the case, it should determine which of the other named plaintiffs (if any) had standing to bring which of the putative class's claims.

Given the procedural posture of this case, we cannot at this time adjudicate the merits of plaintiffs' complaint. We note, however, the gravity of their allegations: The U.S. Supreme Court has described the right to counsel as "indispensable to the fair administration of our adversary system of criminal justice."[167] In the words of one learned commentator, "[t]here is no more important

---

[166] *Olson*, 594 F.3d at 582–84.

[167] *Brewer v. Williams*, 430 U.S. 387, 398 (1977); *see also Powell v. Alabama*, 287 U.S. 45, 57, 68–69 (1932) (describing the importance of the right).

protection provided by the Constitution to an accused than the right to counsel."[168]  Like all participants in our judicial system, and indeed all members of our society, we take seriously an allegation that any person or entity is systematically depriving others of such a fundamental right.

That said, our decision today is limited to jurisdictional issues.  Because the court of appeals erred in dismissing this suit for want of subject matter jurisdiction, we reverse its decision and remand to the trial court for further proceedings consistent with this opinion.

_____
Don R. Willett
Justice

**OPINION DELIVERED:** June 8, 2012

---

[168] 3B CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 731, at 55 (3d ed. 2004).