

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00356-CV

_____

ANTHONY JAMES FLOYD, Appellant

V.

GATEWAY MORTGAGE GROUP, Appellee

On Appeal from County Court at Law No. 1
Tarrant County, Texas
Trial Court No. 2019-005816-1

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

Anthony James Floyd sued Gateway Mortgage Group in Tarrant County Court at Law No. 1 to stop Gateway from foreclosing on his home. Gateway moved to dismiss the case, arguing that because the case's amount in controversy exceeded the general amount-in-controversy limitations for statutory county courts, Tarrant County Court at Law No. 1 lacked subject-matter jurisdiction over the case. The court agreed and dismissed the case. Because this conclusion was incorrect, we will reverse the trial court's judgment and remand the case to the trial court.

## Background

In November 2014, Floyd and his wife signed a deed of trust granting a lien on their home in favor of Gateway to secure a $280,819 promissory note. After the Floyds defaulted and failed to cure, Gateway accelerated the debt and noticed the property for a nonjudicial foreclosure sale that was scheduled to occur between noon and 3:00 p.m. on August 6, 2019.

The morning of the sale, Floyd sued Gateway alleging that it (1) had failed to provide him with a breakdown of the fees it alleged were due; (2) had not provided him with a default notice before foreclosure; (3) had misapplied payments; and (4) had not followed "all required steps in the foreclosure process under Texas state law." Floyd further alleged that Gateway had violated the Fair Debt Collection Practices Act, Texas consumer laws, and the Real Estate Settlement Procedures Act. Floyd prayed for delivery of "requested documents," a temporary restraining order,

preliminary injunctive relief, and monetary relief "as allowed by [t]he FDCPA and Texas Consumer Law."

With his original petition, Floyd filed an application for a TRO and a temporary injunction. In his application, Floyd re-alleged that Gateway had violated various statutes and claimed that Gateway was attempting to wrongfully foreclose on his residence. Around 11:30 a.m. on the day of the foreclosure sale, the trial court granted Floyd's TRO application and ordered Gateway to "cease all collection activity against [Floyd]" and "cease all foreclosure sale proceedings against [Floyd]." Despite the TRO, the foreclosure sale went forward, with Gateway purchasing the property at the foreclosure sale for about $300,000.[1]

Just over a week after the sale, Gateway moved (1) to dissolve the TRO; (2) to dismiss Floyd's petition for lack of subject-matter jurisdiction or, alternatively, because it had no basis in law or fact; and (3) for sanctions. *See* Tex. R. Civ. P. 13, 91a. Gateway asserted that the trial court lacked jurisdiction because the amount in controversy exceeded the $200,000 jurisdictional limit for statutory county courts. *See* Act of June 29, 2011, 82d Leg., 1st C.S., ch. 3, § 4.02, sec. 25.0003(c), 2011 Tex. Gen. Laws 5206, 5211–12 (amended 2019) (current version at Tex. Gov't Code Ann.

---

[1]According to Gateway, it had no actual knowledge of the TRO at the time of the foreclosure sale. Floyd called the substitute trustee's office shortly after noon on the day of the sale to advise Gateway that he had obtained the TRO. The substitute trustee sold the property at 1:06 p.m. A few minutes later, Floyd emailed and faxed copies of his petition, his TRO application, and the TRO to the substitute trustee's office.

§ 25.0003(c)) (providing that statutory county courts have concurrent jurisdiction with district courts in civil cases in which the matter in controversy "exceeds $500 but does not exceed $200,000, excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs, as alleged on the face of the petition").[2] Gateway supported its motion with evidence establishing the note's principal amount and the foreclosure-sale price.

After a hearing, the trial court found that "[t]he matter in controversy exceeds the jurisdictional limits of th[e] Court," and on that basis, dissolved the TRO, granted Gateway's dismissal motion, and dismissed the case with prejudice.

Floyd has appealed and raises three issues: (1) the trial court heard Gateway's Rule 91a motion less than 21 days after it was filed; (2) at the hearing, Floyd was not allowed to present evidence or to speak, "[o]ther than to say that he didn't agree with having the hearing at that time"; and (3) Gateway violated the TRO by foreclosing on the property.[3]

---

[2]Effective September 1, 2020, the amount-in-controversy limit was increased to $250,000. *See* Act of May 26, 2019, 86th Leg., R.S., ch. 696, S.B. 2342, §§ 2, 37. This amendment does not apply here because it was not in effect at the time Floyd sued Gateway in August 2019. *See id.* § 36.

[3]Shortly before Floyd filed his brief, Gateway moved to dismiss the appeal. We deny the motion.

**The Trial Court's Subject-Matter Jurisdiction**

In the trial court, Gateway asserted that the trial court lacked jurisdiction because the amount in controversy exceeded that court's $200,000 jurisdictional limit. The trial court agreed and thus dismissed the case for lack of jurisdiction. Although Floyd does not expressly challenge this ruling on appeal, we must sua sponte address the issue of whether the trial court has subject-matter jurisdiction over the case because our jurisdiction over a case's merits is no greater than that of the court from which the appeal was taken.[4] *See DeWolf v. Kohler*, 452 S.W.3d 373, 382 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("A court is obliged to determine whether it has subject-matter jurisdiction and must consider the question sua sponte even if it is not challenged by a party."); *In re A.K.A.*, No. 05-13-00640-CV, 2014 WL 3845776, at *2 (Tex. App.—Dallas Aug. 6, 2014, pet. denied) (mem. op.) ("An appellate court's jurisdiction over the merits of a case extends no further than that of the trial court from which the appeal is taken."); *see also Pearson v. State*, 315 S.W.2d 935, 938 (Tex. 1958) ("It is well settled that the jurisdiction of the appellate court as to the merits of a case extends no further than that of the court from which the appeal is taken.").

---

[4]Whether the trial court had jurisdiction over the merits is an issue that is fairly included in Floyd's briefing: he complains that the trial court "erred by not allowing evidence to be presented" (because, of course, the trial court cannot consider merits evidence if it has no jurisdiction), and he asks for the dismissal to be reversed and the case remanded for a new trial. *See* Tex. R. App. P. 38.1(f).

If a trial court does not have subject-matter jurisdiction, it cannot decide a case's merits. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Whether a trial court has subject-matter jurisdiction is a legal question that we review de novo. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (op. on reh'g).

As the plaintiff, Floyd had the burden to affirmatively demonstrate the trial court's jurisdiction. *See Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012). When assessing a jurisdictional plea, our analysis begins with the live pleadings. *Id.* We construe the pleadings liberally in the plaintiff's favor, accept all factual allegations as true, and look to the plaintiff's intent. *Id.* We may also consider evidence submitted to negate the existence of jurisdiction, and we must consider such evidence when necessary to resolve the jurisdictional issue. *Id.*

County courts at law are courts of limited jurisdiction. *United Servs. Auto. Ass'n v. Brite*, 215 S.W.3d 400, 401 (Tex. 2007). Tarrant County has three statutory county courts. *See* Tex. Gov't Code Ann. § 25.2221(a). Their jurisdiction is prescribed by Texas Government Code Sections 25.0003 and 25.2222. *See id.* §§ 25.0003, .2222. Section 25.0003 contains a general jurisdictional grant and provides, in part, that a statutory county court has "jurisdiction over all causes and proceedings, civil and criminal, original and appellate, prescribed by law for county courts." *Id.* § 25.0003(a). Under this section, a statutory county court exercising concurrent jurisdiction "with the constitutional jurisdiction of the county court has concurrent jurisdiction with the

6

district court" in (1) "civil cases in which the matter in controversy exceeds $500 but does not exceed $200,000 excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs, as alleged on the face of the petition"; and (2) "appeals of final rulings and decisions of the division of workers' compensation of the Texas Department of Insurance regarding workers' compensation claims, regardless of the amount in controversy." Act of June 29, 2011, 82d Leg., 1st C.S., ch. 3, § 4.02, sec. 25.0003(c), 2011 Tex. Gen. Laws 5206, 5211–12 (amended 2019). But Tarrant County statutory county courts' concurrent jurisdiction is not so limited. Section 25.2222's specific jurisdictional grant to Tarrant County courts at law is more expansive, providing that they have concurrent jurisdiction with district courts in

(1) civil cases in which the matter in controversy exceeds $500 and does not exceed $200,000, excluding mandatory damages and penalties, attorney's fees, interest, and costs;

(2) nonjury family law cases and proceedings;

(3) final rulings and decisions of the division of workers' compensation of the Texas Department of Insurance regarding workers' compensation claims, regardless of the amount in controversy;

(4) eminent domain proceedings, both statutory and inverse, regardless of the amount in controversy;

(5) suits to decide the issue of title to real or personal property;

(6) suits to recover damages for slander or defamation of character;

(7) suits for the enforcement of a lien on real property;

(8) suits for the forfeiture of a corporate charter;

(9) suits for the trial of the right to property valued at $200 or more that has been levied on under a writ of execution, sequestration, or attachment; and

(10) suits for the recovery of real property.

Tex. Gov't Code Ann. § 25.2222(b).

Neither Floyd's pleading nor his TRO application contains a jurisdictional statement or states an amount in controversy. *Cf.* Tex. R. Civ. P. 47(b), (c). Relying on Section 25.0003(c)(1)'s general jurisdictional grant, Gateway moved to dismiss the case for lack of subject-matter jurisdiction arguing that the trial court lacks subject-matter jurisdiction because the note's original principal amount (about $280,000) and the property's foreclosure-sale price (about $300,000) exceeded the $200,000 amount-in-controversy limit for county courts at law. *See* Act of June 29, 2011, 82d Leg., 1st C.S., ch. 3, § 4.02, sec. 25.0003(c), 2011 Tex. Gen. Laws 5206, 5211–12 (amended 2019). *See generally Eris v. Giannakopoulos*, 369 S.W.3d 618, 622 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd) ("Generally, when a suit is for an interest in real property, rather than damages, the value of the property interest at issue determines the amount in controversy."). But, as noted, Section 25.2222's specific jurisdictional grant expands the jurisdiction of Tarrant County statutory county courts. *See* Tex. Gov't Code Ann. § 25.2222(b). And if a general provision "conflicts with a specific provision for a particular court or county, the specific provision controls." *Id.* § 25.0001(a).

Section 25.2222(b)(5) gives Tarrant County courts at law jurisdiction over suits to decide the issue of title to real property. *Id.* § 25.2222(b)(5). Here, Floyd sued Gateway to stop the imminent foreclosure and pleaded that Gateway had not followed "all required steps in the foreclosure process under Texas state law" and was attempting to wrongfully foreclose on his residence. Construing Floyd's pleadings liberally in his favor, accepting all factual allegations as true, and looking to Floyd's intent, Floyd has alleged a wrongful-foreclosure claim against Gateway. *See Heckman*, 369 S.W.3d at 150. Wrongful foreclosure is an issue related to title to real property. *See, e.g.*, *Wells Fargo Bank, N.A. v. Robinson*, 391 S.W.3d 590, 593 (Tex. App.—Dallas 2012, no pet.) (explaining that a "foreclosure sale not conducted in accordance with the terms of the deed of trust gives rise to a cause of action to set aside the sale and the resulting trustee's deed" and that where the noteholder "obtains title to the property at the foreclosure sale and the borrower retains possession, the proper remedy is to set aside the trustee's deed and to restore the borrower's title"); *Villalon v. Bank One*, 176 S.W.3d 66, 71 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) ("The landlord-tenant relationship established in the deed of trust provided a basis for the county court to determine that [the bank] had the right to immediate possession without resolving whether [the bank] *wrongfully foreclosed on the property, an issue relating directly to who has title to the property.*" (emphasis added)). Because this is a suit to decide the issue of title to real property, Tarrant County Court at Law No. 1 has subject-matter jurisdiction over the case because the jurisdiction provided by Section

25.2222(b)(5) is based on the suit's subject matter, not the amount in controversy. *See* Tex. Gov't Code Ann. § 25.2222(b)(5). Accordingly, the trial court erred by dismissing Floyd's case for lack of subject-matter jurisdiction, and we will thus reverse the trial court's judgment dismissing the case and remand the case to the trial court. We need not address Floyd's issues to the extent they are merits based. *See* Tex. R. App. P. 47.1.

## Conclusion

Because we have determined that the trial court does, in fact, have jurisdiction over this case, we reverse the trial court's judgment and remand the case to the trial court. *See* Tex. R. App. P. 43.2(d).

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered: March 11, 2021