**Affirmed and Opinion Filed June 21, 2021**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-20-00238-CV

### DEISY UMANA, Appellant
### V.
### JOSE O. RODRIGUEZ-RAMOS, Appellee

**On Appeal from the 301st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-19-05828**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Nowell
Opinion by Justice Molberg

Appellant Deisy Umana appeals the trial court's final order dismissing her claims after appellee Jose O. Rodriguez-Ramos filed a plea to the jurisdiction and motion to dismiss in response to her original petition, a pleading in which she sought a division of property and a divorce based on an alleged informal, common law marriage.[1] As we explain below, we affirm in part, reverse in part, and remand certain claims in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

---

[1] "Informal" marriage is the statutory term for what many refer to as "common law" marriage. We use the words interchangeably here, as others have done. *See, e.g.*, *Hinojosa v. LaFredo*, No. 05-18-01543-CV, 2021 WL 2217165, at *5 (Tex. App.—Dallas June 2, 2021, no pet. h.) (mem. op.); *Wilson ex. rel. C.M.W. v. Estate of Williams*, 99 S.W.3d 640, 642 n.1 (Tex. App.—Waco 2003, no pet.).

# I. BACKGROUND[2]

Appellant Umana sued appellee Rodriguez-Ramos for divorce and division of property based on a common law marriage she alleges began in June 2016. She also asked the court to quiet title to certain real property located on Falcon Drive in Irving, Texas, to declare that property as community property, and to declare her as being entitled to a share of it.

In response to appellant's lawsuit, appellee filed a pleading that included a plea to the jurisdiction,[3] motion to dismiss,[4] general denial, and motion to expunge a lis pendens appellant had recorded on the Falcon Drive property. That pleading also challenged appellant's standing;[5] denied the parties were informally married; and claimed a common law marriage between them was legally impossible as alleged in appellant's petition because, in June 2016, appellee was married to another woman, Bonnie Rodriguez. Attached to appellee's pleading was a docket sheet from

---

[2] We recount only those facts necessary to our disposition of this case.

[3] In the plea to the jurisdiction portion of his pleading, appellee stated, in part:

> In this case, the Court lacks subject-matter jurisdiction to consider any of the claims [appellant] asserts. The Petition fails to state that [appellee] even had the requisite legal capacity to enter any other marriage, whether it be formal or informal, due to the fact that [he] was legally married during the time period as set forth in the Petition. The Petition is entirely devoid of any fact(s) demonstrating a causal [sic] relationship between the parties[,] and the only person [appellant] lists as those to whom the parties allegedly held themselves out to be married are the [appellant's] own siblings.

[4] The motion to dismiss section stated, in its entirety, "If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court must rule on the plea to the jurisdiction as a matter of law. . . . If a trial court lacks subject-matter jurisdiction, it has no discretion and must dismiss the case. . . . A court must determine at its earliest opportunity whether it has authority to allow the litigation to proceed." (internal citations omitted).

[5] Appellee stated, "Standing requires that [appellant] show she is a wife that is seeking a divorce from a husband" and that "[w]ithout standing, the court lacks jurisdiction to consider [her] claim for divorce."

a divorce proceeding with Mrs. Rodriguez.[6]  Appellee asked that appellant's claims be dismissed and that the court award all relief requested in his pleading.

Appellant opposed appellee's requests, and with her response she submitted her own evidence, including an affidavit and various attachments concerning the Falcon Drive property, among other things.  As to the property, her affidavit states, in pertinent part:

> [Appellee] and I moved in together in June of 2016.  We moved in, at that time, to the house located at 1118 Falcon Drive, Irving, Texas 75060.  My brother, Juan Maunel Umana, originally purchased the house from Paloma Libertad Markez Soto ("Paloma") for me because I was still in Guatemala.  The house was always meant to be my house.  My brother, Juan, purchased it for me from Paloma.  I sent $37,400 from Guatemala to my brother, Juan, to use to purchase the house for me.  I acquired the money by selling land in Guatemala and using the proceeds from the sale of the land to convert to U.S. Dollars and send to my brother for the purpose of purchasing the house for me.

Her affidavit also provides certain details regarding a foreclosure on the property and an agreement she and her brother tried to work out with the investor who foreclosed on it, as well as problems she and her brother had in securing the financing needed as part of that agreement.

Her affidavit also discussed appellee's purchase of the property and stated, in pertinent part:

> Accordingly, Jose O. Rodriguez-Ramos got the bank loan and acquired the house from the private investor without any downpayment.  All parties agreed, at all times, that the house was Deisy Umana's house because she is the one who sold her property in Guatemala in order to

---

[6] The docket sheet is from a divorce proceeding in the 303rd district court between Jose Orlando Rodriguez and Bonnie Rodriguez, cause number DF-16-12298.

–3–

come up with the $37,400 needed to purchase the house. All parties knew that the house was always intended to be Deisy Umana's house. Additionally, Deisy Umana and Jose O. Rodriguez-Ramos were living in the house as husband and wife. The house was purchased during the common law marriage.

On the same day she filed her response, appellant also amended her pleading, repeating the same content as included before, but adding a new paragraph stating:

Plaintiff asks that this Court find that the parties entered into a common law marriage. Then, Petitioner asks this Court to dissolve that marriage and divide the house located at 1118 Falcon Drive, Irving, Texas 75060 (hereinafter the "Property") amongst the parties in a just and right and equitable division. In the alternative, the Petitioner asks the Court to find that the parties entered into a joint venture with respect to the house located at 1118 Falcon Drive, Irving, Texas 75060 and to conduct a judicially supervised [w]ind-up of that joint venture pursuant to the Texas Business Organizations Code, and to partition the Property amongst the parties in kind or by sale. In the further alternative, the Petitioner asks the Court to grant equitable relief in the form of placing the Property into a constructive trust for the Petitioner's benefit, and awarding to the Petitioner the Petitioner's equitable interests in the Property by [v]irtue of unjust enrichment, quantum meruit, quantum valebant,[7] and equitable turnover of 50% of the Property to the Petitioner. The factual bases for equitable relief are substantiated by the Petitioner's affidavit, which is attached hereto and incorporated herein by reference.

On November 18, 2019—five months after appellant filed her response—the court conducted an evidentiary hearing. According to a notice of hearing in the record, the hearing was originally set for August 2, 2019. The hearing notice stated

---

[7] "'Quantum valebant is a common law action of assumpsit for goods sold and delivered, founded on the implied promise to pay what the goods are worth" and is "'[s]imilar to quantum meruit [and] concerns an implied promise to pay for the reasonable market value of goods delivered to the buyer.'" *United States Catastrophic Re-Constructors, Inc. v. Spencer*, No. 05-14-01150-CV, 2015 WL 7075163, at *1 n.2 (Tex. App.—Dallas Nov. 13, 2015, no pet.) (mem. op.) (quoting *State Pipe & Supply, Inc. v. Trident Steel Corp.*, No. 14-99-00536-CV, 2000 WL 1591057, at *6 (Tex. App.—Houston [14th Dist.] Oct. 26, 2000, pet. denied) (not designated for publication)).

–4–

that appellee's "Plea[] to the Jurisdiction and Motion to Expunge Lis Pendens . . . are [both set] for a hearing" on that date in order "to determine whether the relief requested in [those] Motions should be granted." The record does not reveal what, if anything, occurred on August 2, 2019, but the record does includes the transcript from a November 18, 2019 evidentiary hearing.

When the hearing began, the parties' counsel and two interpreters[8] identified themselves, and the court swore in the interpreters and witnesses. Appellee's counsel then asked that the rule be invoked; the trial court announced that it was and explained what that meant. *See* TEX. R. CIV. P. 276; TEX. R. EVID. 614. The court and counsel then discussed why they were there and how they would proceed:

> [THE COURT]: We are actually here on whose motion?
>
> [APPELLEE'S COUNSEL]: Your Honor, [appellant] filed an original petition for divorce, and in response to that [appellee] filed a plea to the jurisdiction and a motion to dismiss. So I believe that that would probably need to be taken up first.
>
> There is also a motion that we filed . . . to expunge the lis pendens. They put a lis pendens on the property as well.
>
> THE COURT: But that's – you guys are claiming – you filed the motion? All I asked was whose motion it was.
>
> [APPELLEE'S COUNSEL]: I believe it's our motion, Your Honor.
>
> THE COURT: That would have been the right answer. So it's your motion, but – so you want to go first?

---

[8] One interpreter indicated he would be interpreting for appellant; the other indicated she would be interpreting for appellee.

–5–

[APPELLEE'S COUNSEL]: Sure. Judge, can I give you a nutshell version?

THE COURT: Is it because they have alleged a common-law marriage?

[APPELLEE'S COUNSEL]: Right.

THE COURT: So do we need to have – are we having the hearing on that issue as well, initially, to find out where we are going because one is the flip side of the other?

[APPELLEE'S COUNSEL]: I agree, Your Honor, because our position is there is no marriage, so there is nothing to divide. Their position is there is a marriage and they want to divide property.

THE COURT: So, [referring by name to appellant's counsel,] generally, in this kind of a situation, it seems like I would let you go forward with your proof about a common-law marriage.

[APPELLANT'S COUNSEL]: Yes, Your Honor.

THE COURT: And then – is that the way you were thinking that we would proceed or are you prepared to do that?

[APPELLANT'S COUNSEL]: I am happy to go first. I think typically the movant does, but it makes no difference to me. We are happy to go first.

THE COURT: It doesn't matter to me either. It's just that it's weird to go forward with something when I haven't heard – I mean, with their response when I don't even know if you have made a prima facie case of common-law marriage. Sometimes we bifurcate the whole trial issue, because it does change things in a divorce if there are no kids, for sure, and I find there is no common-law marriage, then we don't ever get to the case, right?

[APPELLEE'S COUNSEL]: Yes.

THE COURT: Either way we go, you are prepared to do that, right?

[APPELLANT'S COUNSEL]: Yes, Your Honor.

THE COURT: It seems to make sense that we let you start.

[APPELLEE'S COUNSEL]: Judge, we are not opposed to it. We understand, either way, that their position is they have to prove a common-law marriage.

THE COURT: Okay. If you guys are ready to go first, then I will let you go first. I just wanted to make sure I understood and we all understood the issue.

[APPELLEE'S COUNSEL]: It's okay. They can go first.

THE COURT: Do you guys care?

[APPELLANT'S COUNSEL]: Let's go ahead and go. I will call my first witness. We will call [appellant].

Appellant then testified through an interpreter. She was the only witness to testify. On direct-examination, she testified appellee moved into the house on Falcon Drive with her in June 2016, and the two started living together. When asked whether she knew he was married at the time, she answered, "They were in the middle of their plans for getting divorced." The following exchange also occurred:

[APPELLANT'S COUNSEL]: Okay. Did you talk to him about getting married?

[APPELLANT]: Yes.

[APPELLANT'S COUNSEL]: And did you come to any agreements about whether you were going to do that or not?

[APPELLANT]: We had planned it after his divorce.

[APPELLANT'S COUNSEL]: Okay. So was that an agreement or a plan?

[APPELLANT]: Well, agreement, plan, I don't know what the difference is of a plan.

Appellant's counsel also asked her questions about the house on Falcon Drive where she and appellee lived together, and in some of those questions, counsel

–7–

phrased the question in a way suggesting that appellant bought the house. At one point in the hearing, appellant stated she bought the property using funds she had from property she sold in Guatemala, where she moved from before arriving in the United States, but at another point in the hearing, she stated that her brother purchased the property using funds she provided.

However, the court admitted, without objection, various documents offered by both sides' counsel regarding the house, and none of those documents list appellant as a buyer or borrower in connection with the property. In fact, the documents list others as a buyer or borrower in connection with the property—namely appellant's brother and appellee—who apparently purchased the house at different times, through different transactions.

Though we need not detail all of the evidence here, at least five things regarding the Falcon Drive property appear to be undisputed based on this record. First, using money from the sale of another property, appellant gave her brother money for a down payment on the Falcon Drive property, and her brother purchased that property before the parties began living together in 2016. Second, after appellant's brother purchased the property, a foreclosure on the property occurred, through no fault of appellant's brother or the parties. Third, due to certain deceptive practices by the prior seller, appellant's brother sued the prior seller and obtained a judgment for more than $150,000 in appellant's brother's favor. Fourth, as a result of the foreclosure process, appellee purchased the home in 2018 while the parties

lived together.  Fifth, an excerpt from a deed of trust identifies appellee as the only borrower and describes him as "JOSE O. RODRIGUEZ-RAMOS, AN UNMARRIED MAN."

On cross-examination, appellant testified that she and appellee lived together until December 2018, when they separated, and that, although appellee told her they needed a lawyer to be married, they never got a lawyer.  Also during cross-examination, appellant testified, in part:

> [APPELLEE'S COUNSEL]:  Ms. Deisy, are you currently married?
>
> [APPELLANT]:  No.
>
> [APPELLEE'S COUNSEL]:  So you are not married at this time?
>
> [APPELLANT]:  No.
>
> [APPELLEE'S COUNSEL]:  Correct?
>
> [APPELLANT]:  Correct.
>
> [APPELLEE'S COUNSEL]:  So you are a single woman at this time?  Yes or no?
>
> [APPELLANT]:  No.
>
> [APPELLEE'S COUNSEL]:  Well, if you are not married, then you are single, correct?  You can look at me, not your attorney.
>
> [APPELLANT]:  (No response).
>
> [APPELLEE'S COUNSEL]:  Ma'am, you said you were married in June of 2016, correct?
>
> [APPELLANT]:  Yes.
>
> [APPELLEE'S COUNSEL]:  And you admit that Jose was still married to his wife, Bonnie Rodriguez, in June of 2016, correct?
>
> [APPELLANT]:  Yes.

[APPELLEE'S COUNSEL]: Yet you still believe you are married to Jose even though he was married to someone else, correct?

[APPELLANT]: Uh-huh, yes.

[APPELLEE'S COUNSEL]: Your Honor, may I approach? I have a certified copy of an Agreed Final Decree of Divorce dated July 25, 2017.[9]

THE COURT: You may.

[APPELLEE'S COUNSEL]: I will ask that be admitted, Respondent's Exhibit 1.

[APPELLANT'S COUNSEL]: No objection.

THE COURT: Admitted.

. . . .

[APPELLEE'S COUNSEL]: Also, you were planning a ceremony because you wanted to be married to [appellee] correct?

[APPELLANT]: Correct.

[APPELLEE'S COUNSEL]: So you were planning a ceremony so that you could be married to [appellee] correct?

[APPELLANT]: Yes.

Both sides offered exhibits during appellant's testimony, including some that had already been provided to the court as attachments to the parties' court filings. The trial court admitted seven exhibits in the hearing.

After appellant finished testifying, her counsel called appellant's brother, Juan Umana, as a witness. Appellee objected and argued appellant had not disclosed witnesses in her discovery responses. Appellant disputed this, but the trial court

---

[9] This was the decree affecting Rodriguez-Ramos and Bonnie Rodriguez in cause number DF-16-12298 in the 303rd district court.

sustained the objection. Appellant's counsel then stated, "For purposes of the record . . . Mr. Umana would have confirmed [appellant's] testimony earlier that he was one of the people that the marriage was represented to and that the rest of what she testified to is accurate." The judge asked whether counsel was "offering that like a bill of exception or something?" to which counsel responded, "Yes, your Honor."

Appellee then moved for directed verdict, and counsel presented arguments. The trial court then granted appellee's motion to dismiss and stated, near the end of the hearing, "As far as the prima facie case for a common-law marriage, [Umana has] not met that burden as we sit here today. I don't find that there is enough – or any evidence that evidences the agreement by the parties to be married."

During the hearing, the parties did not mention appellant's amended pleading or the alternative claims she referred to in its new paragraph.

The judge signed a memorandum ruling on the day of the hearing. It stated, in pertinent part, "RENDERED ON November 18, 2019 . . . Motion to dismiss granted. No prima facie case made for informal marriage." Three days later, the judge signed the final order that is the subject of this appeal. The final order stated:

> On this Day, November 18, 2019, came to be heard Jose Rodriguez-Ramos' Motion to Dismiss Deisy Umana's Original Petition for Divorce. The Court FINDS that no Prima Facie case was made for an informal marriage.
>
> Jose Rodriguez-Ramos' Motion to Dismiss Deisy Umana's Original Petition for Divorce is hereby GRANTED.
>
> This Order hereby disposes of all claims contained in Deisy Umana's Original Petition for Divorce. This Final Order is appealable.

–11–

Appellant then filed a motion for new trial that was overruled by operation of law. She appeals and raises three issues, all three of which we address in section III below. Generally, she argues the trial court erred in conducting the evidentiary hearing, in concluding she made no prima facie case of common law marriage, and in excluding witnesses from testifying at the hearing.

## II. LEGAL STANDARDS

Before addressing appellant's specific issues, we include pertinent information regarding the legal standards we apply.

### A. Standard of Review

Whether a court has subject matter jurisdiction and whether a plaintiff has standing or has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction are questions of law we review de novo. *See Farmers Tex. Cty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020) (de novo review on determinations regarding standing and pleas to the jurisdiction) (citations omitted); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004) ("Appellate courts reviewing a challenge to a trial court's subject matter jurisdiction review the trial court's ruling de novo.")

A motion to dismiss based on a lack of jurisdiction is the "functional equivalent of a plea to the jurisdiction; both challenge the trial court's power to determine the subject matter of a claim." *Richardson Hosp. Auth. v. Duru*, 387

S.W.3d 109, 112 (Tex. App.—Dallas 2012, no pet.) (citing *Patton v. Jones*, 212 S.W.3d 541, 545 (Tex. App.—Austin 2006, pet. denied)).

A plea to the jurisdiction "may challenge the pleadings, the existence of jurisdictional facts, or both." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). When a plea to the jurisdiction challenges the pleadings, we look to whether the plaintiff has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear the case. *Miranda*, 133 S.W.3d at 226. We liberally construe a plaintiff's pleadings in favor of jurisdiction, and we look to the plaintiff's intent, accepting as true the facts alleged. *Id*. at 226, 228.

When a plea challenges the existence of jurisdictional facts, we must consider relevant evidence submitted by the parties to resolve the jurisdictional issues. *Id*. at 227. In reviewing such a plea, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Alamo Heights*, 544 S.W.3d at 771; *Miranda*, 133 S.W.3d at 227–28. However, we cannot disregard evidence necessary to show context or evidence and inferences unfavorable to the nonmovant if reasonable jurors could not do so. *See Alamo Heights*, 544 S.W.3d at 771.

This standard mirrors our summary judgment standard under Texas Rule of Civil Procedure 166a(c) and places the burden on the movant to meet the standard of proof to support its contention the trial court lacks subject matter jurisdiction. *See Miranda*, 133 S.W.3d at 228. Once the movant asserts and provides evidentiary

–13–

support for its plea, the plaintiff is then required to show only that a disputed fact issue exists on the jurisdictional issue. *Miranda*, 133 S.W.3d at 228.

If the evidence creates a fact question on the jurisdictional issue, the trial court cannot grant the plea, and the fact issue is for the fact finder to resolve. *See Alamo Heights*, 544 S.W.3d at 771; *Miranda*, 133 S.W.3d at 227–28. If the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Miranda*, 133 S.W.3d at 228.

## B.    Standing

Standing is a threshold requirement to maintaining a lawsuit. *Farmers Tex. Cty. Mut. Ins. Co.*, 598 S.W.3d at 240 (citing *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012)). In Texas, to establish standing, "a plaintiff must allege 'a concrete injury . . . and a real controversy between the parties that will be resolved by the court." *Id.* (quoting *Heckman*, 369 S.W.3d at 154). The injury alleged by a plaintiff must be threatened or actual—not hypothetical. *Id.* (citations omitted). Courts look to a plaintiff's pleadings to determine whether a plaintiff has alleged a concrete injury sufficient to meet the standing requirement. *Id.* (citation omitted). "Because the standing determination is made by looking to the plaintiff's pleadings, the mere fact that a plaintiff may ultimately not prevail on the merits of the lawsuit does not deprive the plaintiff of standing." *Id.* (citing *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 305 (Tex. 2008)).

–14–

## C.  Exclusion of Evidence

In an appeal of a plea to the jurisdiction, we review a trial court's decision to admit or exclude evidence for an abuse of discretion. *See Sloan Creek II, L.L.C. v. N. Tex. Tollway Auth.*, 472 S.W.3d 906, 918 (Tex. App.—Dallas 2015, pet. denied) (citing *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005)).  A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Id.* (citing *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002); *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999)).

We will not reach an issue regarding error in the exclusion of evidence unless the party complaining about the exclusion has preserved error. *See Sink v. Sink*, 364 S.W.3d 340, 346–47 (Tex. App.—Dallas 2012, no pet.) (citing *In re Estate of Miller*, 243 S.W.3d 831, 837 (Tex. App.—Dallas 2008, no pet.)).  "A party may claim error in a ruling to . . . exclude evidence only if the error affects a substantial right of the party and . . . a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." TEX. R. EVID. 103(a)(2); *see Sink*, 364 S.W.3d at 347 (citations omitted) (complaining party must offer the evidence and secure adverse ruling from the trial court).  Without an offer of proof or a formal bill of exception, we cannot determine whether the exclusion of evidence was harmful.  *Sink*, 364 S.W.3d at 347 (citations omitted); *see* TEX. R. APP. P. 44.1(a) (standards for reversible error).

**D.    Informal Marriage**

Texas law provides two ways to enter into a valid marriage: through a ceremonial marriage, or through an informal one. *Hinojosa*, 2021 WL 2217165, at *5 (citations omitted); *see* TEX. FAM. CODE §§ 2.001, 2.202, 2.401.

An informal, or common law marriage can be established in one of two ways. First, a party may present evidence that the parties filed a declaration of informal marriage with the county clerk. *Hinojosa*, 2021 WL 2217165, at *5 (citing TEX. FAM. CODE § 2.401(a)(1)). While such a declaration constitutes prima facie proof of the parties' informal marriage, parties may have a valid common law marriage without filing one. *See In Russell v. Russell*, 865 S.W.2d 929, 931 (Tex. 1993) (declaration constitutes prima facie proof but "parties need not make the declaration to have a valid common law marriage.")

Second, a couple may establish an informal marriage by demonstrating that: (1) they "agreed to be married"; (2) "after the agreement they lived together in [Texas] as husband and wife"; and (3) "there represented to others that they were married." TEX. FAM. CODE § 2.401(a)(2); *Hinojosa*, 2021 WL 2217165, at *5; *Estate of Pandozy*, No. 05-19-00755-CV, 2021 WL 711500, at *3 (Tex. App.— Dallas Feb. 22, 2021, no pet.) (mem. op.). The first element—an agreement to be married—cannot be established with proof of an intention to be married at some point in the future. *See Aguilar v. State*, 715 S.W.2d 645, 648 (Tex. Crim. App. 1986) ("A present intention to be married in the future is not enough. The parties

–16–

must intend to be husband and wife from the moment of the agreement onward."); *Winegardner v. Hughes*, No. 07-18-00434-CV, No. 07-19-00283-CV, 2020 WL 1966283, at *3 (Tex. App.—Amarillo Apr. 23, 2020, no pet.) (mem. op.) ("evidence of future plans [to marry] negates an essential element of [an] informal marriage claim as it demonstrates the lack of a present intent to be married").

The existence of an informal marriage is a fact question. *In re O.R.M.*, 559 S.W.3d 738, 744 (Tex. App.—El Paso 2018, no pet.) (citations omitted); *Joplin v. Borusheski*, 244 S.W.3d 607, 610–11 (Tex. App.—Dallas 2008, no pet.) (citations omitted). The party seeking to establish the existence of an informal marriage bears the burden of demonstrating the three elements by a preponderance of the evidence. *Hinojosa*, 2021 WL 2217165, at *5 (citations omitted); *Pandozy*, 2021 WL 711500, at *3 (citation omitted); *In re O.R.M.*, 559 S.W.3d at 744 (citations omitted); *Joplin*, 244 S.W.3d at 610–11 (citation omitted).

An informal marriage does not exist until the concurrence of all three elements. *Winegardner*, 2020 WL 1966283, at *3 (citing *Eris v. Phares*, 39 S.W.3d 708, 713 (Tex. App.—Houston [1st Dist.] 2001, pet denied)); *In re O.R.M.*, 559 S.W.3d at 744.

### III. ANALYSIS

### A. Hearing and Dismissal of Family Code Claim

In her first issue, appellant argues the trial court erred "in dismissing the case on a plea to the jurisdiction by conducting an evidentiary hearing, like a trial," and

"making fact findings on the merits of the case instead of merely determining whether the Court [did] or did not have jurisdiction over the case[.]" Because the trial court's finding related to whether or not a prima facie case of common law marriage had been made, a matter relating directly to her claim for divorce and property division under the family code, we limit our discussion in this section to the family code claim and address the dismissal of her alternative claims in section III.B. below.

In arguing this issue, appellant makes three main assertions. First, she asserts the trial court could not have ruled on the motion to dismiss because, according to her, the motion was not set for hearing. Second, she asserts that appellee's arguments regarding jurisdiction and standing[10] were meritless. Third, she asserts that neither the plea to the jurisdiction nor the motion to dismiss were proper vehicles for disposing of the case, citing as support *Almeida v. Estrada*, No. 04-05-00255-CV, 2006 WL 2818067, at *2 (Tex. App.—San Antonio Oct. 4, 2006, no pet.).

Appellee ignores the first of these three assertions but disputes the other two. Generally, appellee argues the trial court correctly ruled and characterizes the ruling as a decision to grant his motion for directed verdict. We disagree with appellee's

---

[10] She also makes arguments regarding standing, which we need not address here, because it is not clear that the trial court made any rulings regarding standing. *See* TEX. R. APP. P. 33.1(a)(1).

mischaracterization because there is no indication in either the hearing transcript[11] or final order[12] that the trial court ruled on that motion.[13]

We also disagree with appellant's assertions, however. As to her first assertion that appellee's motion to dismiss was not set for hearing, we note that appellee's plea to the jurisdiction and motion to dismiss were both included together in the same pleading, as was appellee's motion to expunge the lis pendens, which was also set for hearing on the same day and mentioned in the notice of hearing. We are unpersuaded by appellant's argument that the hearing notice was insufficient to put her on notice that the motion to dismiss would be heard because, as appellant acknowledges, both the plea to the jurisdiction and motion to dismiss were based on a lack of jurisdiction, and in such circumstances, the motion served as a "functional equivalent of a plea to the jurisdiction." *See Richardson Hosp. Auth.*, 387 S.W.3d at 112. Moreover, appellant failed to preserve error regarding any problems with the hearing notice when, at the beginning of the hearing, the motion to dismiss was specifically mentioned as a matter that was being heard, and appellant failed to object or take any other step at that point to preserve error. *See* TEX. R. APP. P.

---

[11] When announcing its ruling, the trial judge referred to the plea to the jurisdiction, motion to dismiss, and to appellee's argument that jurisdiction was lacking without a prima facie case of common law marriage. The court then stated, "I am saying that you did not do that, so that follows, that we just grant their motion to dismiss."

[12] The final order states the court is granting a motion to dismiss, not a motion for directed verdict.

[13] We express no opinion on appellee's motion for directed verdict under the circumstances presented, but we do note that if a motion for directed verdict been made in the context of a bench trial, we would consider it not as a motion for directed verdict but as a motion a motion for judgment instead. *See, e.g.*, *Pandozy*, 2021 WL 711500, at *3 (citations omitted).

–19–

33.1(a)(1); *In re Estate of Miller*, 243 S.W.3d at 837 (to preserve error on appeal, party must present to the trial court a timely request, motion, or objection, state the specific grounds therefore, and obtain a ruling that appears in the record).

Finally, we disagree with appellant's second and third assertions, in which she claims the trial court erred in conducting an evidentiary hearing and concluding appellant had not made a prima facie case of informal marriage. We are unpersuaded by and decline to follow our sister court's opinion in *Almeida v. Estrada*, which appellant relies on, as it is distinguishable and is not binding on us here. In *Almeida*, unlike in this case, the nonmovant's counsel made process-related objections as the dismissal hearing began, and in light of the record there, the appellate court concluded that "[a] dismissal [was] an inappropriate means of deciding the merits of a case" and that "the trial court reversibly erred in entering a dismissal order that adjudicated the merits of the case." *Almeida*, 2006 WL 2818067, at *2. Also, in the trial court's rendition of judgment, the trial court in *Almeida* stated: "Based on the totality of the evidence provided to the Court from testimony and affidavit, this Court is of the opinion that there was no marriage between Cindy Almeida and Antonio Estrada." *Almeida*, 2006 WL 2818067, at *1. In contrast, in the trial court's rendition in this case, the trial court spoke of the lack of a prima facie case, a seemingly slight, but important distinction, at least in the context of the specific circumstances before us, where the judge stated she "[did not] find . . . any evidence that evidences the agreement by the parties to be married."

As we have already noted, a plea to the jurisdiction can be based on the pleadings or on evidence. *Miranda*, 133 S.W.3d at 226. When, as here, a plea challenges the existence of jurisdictional facts, the trial court was to consider relevant evidence submitted by the parties to resolve the jurisdictional issues. *See id.* at 227. The evidentiary standards the court was to follow mirror the summary judgment standard under civil procedure rule 166a(c). *See Miranda*, 133 S.W.3d at 228. This placed the burden on appellee, as the movant, to meet the standard of proof to support his contention the trial court lacked subject matter jurisdiction. *See id.* Once appellee asserted and provided evidentiary support for his plea, appellant was then required to show only that a disputed fact issue exists on the jurisdictional issue. *See id.* If the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court could rule on the plea as a matter of law. *See Miranda*, 133 S.W.3d at 228. If the evidence creates a fact question on the jurisdictional issue, the trial court cannot grant the plea, and the fact issue is for the fact finder to resolve. *See Alamo Heights*, 544 S.W.3d at 771; *Miranda*, 133 S.W.3d at 227–28.

Here, appellee submitted evidence with his plea and motion showing that he was not yet divorced from Bonnie Rodriguez in June 2016, when appellant claims that she and appellee began their alleged common law marriage. Appellant then submitted evidence with her response, and she amended her pleading, again stating in the hearing and in her amended pleading that she and appellee began a common

law marriage in June 2016. However, appellant also agreed that in June 2016, when the parties began living together, appellee was still married to Bonnie Rodriguez and said "[t]hey were in the middle of their plans for getting divorced," and she testified that she (appellant) was not currently married.

Based on the record before us, we conclude the trial court did not err in dismissing appellant's claims for divorce and property division after the evidentiary hearing because, as the trial court suggested—albeit with different language[14]—the evidence did not raise a fact issue on the parties' agreement to be married, a necessary element of establishing the existence of a common law marriage. *See Miranda*, 133 S.W.3d at 228 (describing general review standards on plea to jurisdiction); *Estate of Pandozy*, 2021 WL 711500, at *3 (listing common law marriage elements and affirming dismissal on jurisdictional grounds of case involving common law marriage); *Winegardner*, 2020 WL 1966283, at *3 (same).[15]

We overrule appellant's first issue.

---

[14] In rendering judgment, the court stated that appellant had not met her burden of establishing a prima facie case and explained, "I don't find that there is enough – or any evidence that evidences the agreement by the parties to be married."

[15] *Cf. Farjardo* No. 14-15-00653-CV, 2016 WL 4206009, at *2–4 (Tex. App.—Houston [14th Dist.] Aug. 9, 2016, no pet.) (mem. op.) (in case involving presumptions and burdens that do not apply here, appellate court assumed a plea to the jurisdiction was a proper vehicle for dismissal but reversed a trial court's order dismissing a common law marriage claim, where appellate court concluded that appellant presented more than a scintilla of evidence on each element of common law marriage).

**B.     Dismissal of Alternative Claims**

In her second issue, appellant argues the trial court erred in dismissing her alternative claims for breach of contract, unjust enrichment, quantum meruit, quantum valebant, constructive trust, and equitable turnover for fifty percent of the property because appellee did not include them in his plea to the jurisdiction, did not submit any proof negating them at the hearing, and because those claims were included in her amended petition and were still pending at the time of the final order.

Appellee responds with two arguments but cites no authorities in support. First, appellee argues appellant failed to preserve error on this issue. Second, appellee argues that, because appellant presented no evidence on her alternative claims in the hearing, the trial court properly dismissed appellant's alternative claims by granting his motion for directed verdict.

We disagree with appellee's first argument because appellant raised this issue in the trial court by including it in her motion for new trial, which was overruled by operation of law. *See* TEX. R. APP. P. 33.1(a)(1).

We also disagree with appellee's second argument, as we did with the same argument in analyzing appellant's first issue. As we previously discussed, there is nothing in the record to indicate the court ruled on any motion for directed verdict.

In her reply brief, appellant argues, in essence, that by dismissing her alternative claims on this record—where appellee made no prior challenge to them

–23–

based on either the pleadings or the evidence—the trial court effectively reversed the parties' respective burdens under *Miranda* and therefore erred as a matter of law.

We agree and conclude the trial court erred as a matter of law by dismissing appellant's alternative claims in its final order because appellee did not challenge appellant's alternative claims in his plea to the jurisdiction or motion to dismiss and thus did not satisfy his initial burden under *Miranda*. *See Miranda*, 133 S.W.3d at 226–28 (discussing burdens).

We sustain appellant's second issue.

## C.    Exclusion of Witnesses

In her third issue, appellant argues that the trial court abused its discretion by excluding testimony by witnesses who would have corroborated her assertions that the parties had agreed to be married and held themselves out to the public as such. In her briefing, appellant discusses the witnesses generally, not by name, and when describing their anticipated testimony, she cites only to her own testimony identifying unnamed "[w]itnesses" as "all" of the proof she had, besides the parties' living together, that appellee agreed to be married to her.

Appellee does not address the substance of appellant's arguments and argues appellant failed to preserve error on this issue.

We need not reach this issue with regard to any witnesses other than appellant's brother, Juan Umana, because as to all other witnesses besides him, there is no indication in the record that appellant called, or that the trial court excluded,

any other witness, and she made no offer of proof or bill of exception regarding any other witness's testimony. Because of this, we conclude appellant failed to preserve error on this issue for any witness other than Mr. Umana. *See Sink*, 364 S.W.3d at 346–47; TEX. R. APP. P. 33.1.

As to Mr. Umana, however, appellant at least attempted to preserve error, and although we do not decide whether her attempt was sufficient, we presume for purposes of this appeal that it was.[16] However, there is nothing in the record demonstrating the trial court abused its discretion in excluding Mr. Umana's testimony on the basis of a failure to disclose him as a witness.[17]

In addition, the case appellant relies on, *In re Toyota Motor Corporation*, 191 S.W.3d 498, 501 (Tex. App.—Waco 2006, no pet.) (orig. proceeding) is distinguishable. In *Toyota*, the court considered whether it was error to allow an undisclosed expert to testify in a hearing on a motion to quash deposition notices for minor children claimants. *Id*. The court held that it was not error to allow the

---

[16] Appellant called Mr. Umana as a witness; the trial court sustained appellee's objection to his testimony on the grounds that appellant had not disclosed him as a witness; and after the court's ruling, appellant's counsel stated, "For purposes of the record . . . Mr. Umana would have confirmed [appellant's] testimony earlier that he was one of the people that the marriage was represented to and that the rest of what she testified to is accurate."

[17] While appellant attached to her reply brief a disclosure response that was purportedly "[d]iscussed at [t]rial as to Juan Umana," we may not consider this document in our review because it is not part of the appellate record. *See* TEX. R. APP. P. 34.1; *Burke v. Ins. Auto Auctions Corp.*, 169 S.W.3d 771, 775 (Tex. App.—Dallas 2005, pet. denied) (citing *Green v. Kaposta*, 152 S.W.3d 839, 841 (Tex. App.—Dallas 2005, no pet.); *Elwell v. State*, 872 S.W.2d 797, 799 (Tex. App.—Dallas 1994, pet. ref'd) ("we cannot take judicial notice of the records of any court not properly admitted into evidence before the trial court, even though the records might be attached to a [party's] brief") (citing *Penix v. State*, 748 S.W.2d 629, 630–31 (Tex. App.—Fort Worth 1988, no pet.)).

testimony because rule of civil procedure 193.6 "does not operate to exclude an undisclosed expert's testimony from a preliminary hearing not on the merits." *Id.* (citing *Monsanto Co. v. Davis*, 25 S.W.3d 773, 785 (Tex. App.—Waco 2000, pet. dism'd w.o.j.). That reasoning does not apply to the circumstances here. Unlike the motion to quash context in *Toyota*, the evidentiary dispute in this case arose in a context requiring the application of the same review standards as a traditional motion for summary judgment, which certainly involves the merits. *See Miranda*, 133 S.W.3d at 228 (when a plea to the jurisdiction challenges existence of jurisdictional facts, not the pleadings, review standard is the same as a traditional motion for summary judgment); *Lawson v. Collins*, No. 03-17-00003-CV, 2017 WL 4228728, at *7 (Tex. App.—Austin Sept. 20, 2017, no pet.) (mem. op.) (implicitly refusing to apply *In re Toyota* in a summary judgment context, which court viewed as plainly testing the merits of a claim).

Finally, even though we assume appellant preserved error, and even if we concluded an abuse of discretion occurred, we may not reverse unless the error was harmful. *See* TEX. R. APP. P. 44.1(a) (standards for reversible error); *Sink*, 364 S.W.3d at 347. Despite appellant's conclusory arguments that she was harmed by the court's alleged error in excluding Mr. Umana's testimony, neither party mentions rule 44.1 or the standards we are required to follow in applying it. Based on the record here, we cannot conclude that the exclusion of Mr. Umana's testimony

"probably caused the rendition of an improper judgment" or "probably prevented the appellant from properly presenting the case" to us. *See* TEX. R. APP. P. 44.1(a).

We overrule appellant's third issue.

## IV. CONCLUSION

For the reasons explained herein, we overrule appellant's first and third issues and sustain her second. As a result, we affirm the trial court's final order with regard to Umana's claim for divorce and property division under the family code but reverse the final order with regard to her alternative claims for breach of contract, unjust enrichment, quantum meruit, quantum valebant, constructive trust, and equitable turnover for fifty percent of the property and remand those alternative claims to the trial court for additional proceedings. However, we express no opinion on the viability of those alternative claims, the sufficiency of appellant's pleadings in asserting them, or the sufficiency of appellant's evidence in proving them, if any, as none of those issues are properly before us in this appeal.

/Ken Molberg/

200238f.p05

KEN MOLBERG
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DEISY UMANA, Appellant

No. 05-20-00238-CV      V.

JOSE O. RODRIGUEZ-RAMOS, Appellee

On Appeal from the 301st Judicial District Court, Dallas County, Texas Trial Court Cause No. DF-19-05828. Opinion delivered by Justice Molberg. Justices Reichek and Nowell participating.

In accordance with this Court's opinion of this date, the trial court's final order is **AFFIRMED** with regard to Umana's claim for divorce and property division under the family code and is **REVERSED** and **REMANDED** to the trial court for additional proceedings with regard to Umana's alternative claims for breach of contract, unjust enrichment, quantum meruit, quantum valebant, constructive trust, and equitable turnover for fifty percent of the property.

Judgment entered this 21st day of June, 2021.